JOHN RAPALYE, executor &c., *vs.* LAWRENCE C. RAPALYE and others.

A testator, by his will, executed in 1843, devised his homestead farm to his son C., in fee.   By subsequent provisions, he directed that his wife should " be in full possession" of this farm until C. became of age ; provided she kept and schooled the said C. and a daughter of the testator, named Hannah. The testator also directed that if his wife desired it, the said farm might be leased out until C. became of age ; and in that case the widow might keep the house, and such part of the farm as she saw fit, until C.'s majority ; provided she remained unmarried.   If C. died before he became of age, then the testator directed that the widow should remain in possession of the farm as long as she continued unmarried.   The widow died in Dec. 1849, not having married again.   C. survived her, and died in September, 1853, under age.

Rapalye *v.* Rapalye.

*Held* that the life estate of the widow, in the homestead farm, which was to take effect only in case of her surviving C. never vested in her; and at the time of her death she had only the right to the possession of the lands until the day when C. should become of age; which was merely a term of years.

*Held also,* that the testator's daughter Hannah took no interest or estate whatever; and therefore at the death of the widow, in December, 1849, C. acquired a perfect title to the homestead farm, and became entitled to the rent which became due and was collected in April, 1850. That it was not a case for apportionment; the provisions of the revised statutes (1 *R. S.* 747, § 22) extending only to the case of a demise by a tenant for life.

The will also contained the following clause: " My will is that the stock, and every thing remain on the farm and in full possession of my wife, until my son C. becomes of age." If she wished the farm to be hired out, however, then such part of the stock as she wished, or should select, was to be left in her possession. *Held* that hay, grain, provisions and other articles, of which the use was consumption, as well as horses, cattle, farming tools, and all other personal property of every description, on the farm, passed by this bequest. And that in such a case the rule is well settled that the whole must be sold, and the interest, only, can be enjoyed by the legatee for life or a limited term.

By the fourth clause of the will, the testator gave to his daughter Hannah a farm which at the time of his death, was subject to a mortgage, given by him for the purchase money, on which there was due about $4000. *Held,* that in the absence of any thing in the will amounting to a direction that such mortgage should be otherwise paid—except the words " I order my executors to pay all my just debts and funeral charges"—the devisee must satisfy the mortgage, herself, out of her own property, without resorting to the executors.

*Held also,* that the meaning of the words of such devise being sufficiently plain, parol evidence in regard to the condition of the testator's property, and his family, at the time of his death, and of his intention to pay off the mortgage during his lifetime and to leave the farm to his daughter unincumbered, was inadmissible.

A general direction in a will, for the payment of the testator's just debts, is not the " express direction" which the statute (1 *R. S.* 749, § 4) requires, to change the statutory order of marshalling the assets of a testator, and to throw the burden of a mortgage debt from the land upon the personalty.

No particular expression, or form of words, is necessary to constitute such a direction as the statute requires, that the mortgage be paid in some other manner than by the devisee. Any provision which clearly expresses that intent is sufficient.

But there must appear from the terms of the will itself a design to modify the statutory rule, and to apply to the particular case a principle different from that which the law has made generally applicable to cases where lands descend, or are devised, subject to a mortgage.

APPEAL from a judgment entered at a special term. The action was brought by the plaintiff as executor of Coert Horton deceased, for a construction of the last will and testament of the testator, dated May 14, 1842; and for a judicial determination of the rights of the several parties claiming interests in the estate of the testator. The testator died December 23, 1843, leaving his widow Ann Maria Horton, and three children, Jacob, Hannah Maria, (wife of the defendant L. C. Rapalye,) and Coert, surviving him. The testator, about a year and a half before his death, had bought for his daughter Hannah Maria a farm called the Hasbrook farm, at the price of something over $12,000. He paid one-third of the purchase money down, and for the residue ($8151.66) gave his bond and a mortgage on said farm, payable in two equal annual installments, payable respectively on or before 1st May, 1843, and 1st May, 1844, with interest. He paid the first installment, due 1st May, 1843, and intended to pay the second when it became due, but died before that time. After the testator's death, his widow, Ann Maria, with their two minor children, lived on the homestead farm for about five years; subsequently lived elsewhere, and that farm was rented out. The executors sold part of the stock, cattle, farming utensils, &c. on that farm; and certain articles which were the produce of that farm, and were on the farm at the time of the testator's death, and were included in the inventory, amounting to $485, were left in the possession of the widow, who used the same while so residing on the farm, or sold them, and used the proceeds. The testator's widow, Ann Maria, died on the 4th of December, 1849, not having again married. The balance due on the testator's mortgage upon the Hasbrook farm was paid about 1st May, 1844, out of moneys belonging to the estate, and that mortgage was thereupon assigned to the executors. The testator's son, Coert, died September 17, 1853, under age, and unmarried. This action was brought by Lawrence C. Rapalye and Hannah Maria his wife, and Jacob Horton, the son of the testator, in his own right and as executor of his de-

ceased brother, Coert Horton. The cause was tried by the court, without a jury, at the Dutchess circuit, in Dec. 1856, when the following opinion was delivered by Justice EMOTT, by whom the cause was tried. It sets forth the material parts of the will of which a construction was sought.

EMOTT, J. " The testator, Coert Horton, devised his homestead farm, upon which he resided when he made his will, to his son Coert, in fee. By subsequent provisions he directed that his wife, Ann Maria, should 'be in full possession' of this farm so devised to their son, until he became of age; provided she kept and schooled the testator's two children—this son Coert, and a daughter older than him, named Hannah Maria. Again, the will directs that if his wife desires it, this farm may be leased out until his son becomes of age; and in that case the widow may keep the house and such part of the farm as she sees fit, until Coert's majority, provided she remains unmarried. If Coert died before he became of age, then the testator directed that the widow should remain in possession of the farm as long as she continued unmarried. The widow died December 4, 1849, not having married again. Her son Coert survived her, and died September 17, 1853, under age.

It has been made a question between these parties, what interest the widow took in the homestead farm by these provisions, and when her estate terminated. I cannot, however, entertain any doubt, or discover any difficulty, as to the true construction of the will on this point. There was but one contingency in which the estate of the widow in the homestead farm could last for her own life: this was, in case of the death of her son before he reached his majority, and of her surviving him and continuing unmarried. If they both lived together until he became 21, then her estate would have terminated, and the title would have vested in him, in fee. If she had survived him, and he died during his minority, then she would have taken an estate for her life, subject to be defeated upon her marrying again; but by her death her estate must have determined in any event; and as she died while her son was

living, the life estate, which was to take effect only in case of her surviving him, never vested in her. She had at her death the right to the possession of the lands until the day when her son would become of age—which was in fact a term of years. The daughter Hannah Maria took no interest or estate whatever, and therefore at the death of the widow, on the 4th of December, 1849, Coert Horton the younger acquired a perfect title to the homestead farm. The farm was then under lease, by whom made, or by what authority, does not very clearly appear; but it reserved an annual rent, which did not become payable until the following April. The whole of this rent passed to the devisee Coert Horton. It was not a case for apportionment, for the provisions of the statute (1 *R. S.* 747, § 22,) extend only to the case of a demise by a tenant for life; and the interest of the widow never grew to be a life estate. The rent which became due and was collected in April, 1850, belonged therefore to Coert Horton, and must be accounted for to his administrator.

The next question arises upon the bequest of the stock and other personal property on the farm to the widow, which is expressed in these words: 'My will is that all the stock and every thing remain on the farm and in full possession of my wife, until my son Coert becomes of age.' If she wished the farm to be hired out, however, then such part of the stock as she wished or should select was to be left in her possession, obviously for the same period. It is contended that this as a bequest of the use of things, *quæ ipsæ consumuntur usu,* vested an absolute title in the widow, the first taker, to whom the use was given. When there is a specific bequest for life of chattels, or the use of chattels, which are consumed in the use, the better opinion would seem to be, that a bequest over is void; and that the person to whom they are given for life, takes an absolute interest. I have not been able to find that it has ever been decided that a bequest of such chattels, or the use of them, for a term less than life, would have the same effect. I should be inclined to hold that it did, where the

Rapalye *v.* Rapalye.

time of use would or might be long enough for the consumption and destruction of the property in use. If that were this case, I should follów the analogy of the decisions upon legacies for life, and treat this bequest as an absolute gift to the widow. But the difficulty in the application of such a rule here is, that this legacy embraced property of a different description, as well as the hay, grain, provisions and other articles, of which the use was consumption, all which were inventoried to the amount of $485, and delivered to the widow. Horses, cattle, farming tools, and all other personal property of every description, on the farm, passed by this bequest. In such a case, the rule is well settled that the whole must be sold, and the interest only can be enjoyed by the legatee for life or a limited term. (*Covenhoven* v. *Shuler*, 2 *Paige*, 122. *Randall* v. *Kornell*, 3 *Mer*. *R*. 193.) It is only when there is a specific bequest for the life of the legatee of articles, all of which must be consumed in their use or enjoyment, that no valid subsequent interest can be created, and the first taker takes the whole. The executors of the widow must account for the proceeds of the property which she *sold*, to the amount of $485, and which seems to be the only portion of the property included in this legacy which has not been correctly accounted for, to the satisfaction of the executors of her husband. She had a right to the income of this property or its proceeds, during her life, as she died before Coert, her son, became of age, and her estate will be liable for the interest upon the amount only from the time of her death.

The remaining question is of more importance—perhaps of greater difficulty. By the fourth clause of the will, the testator gives to his daughter Hannah Maria, now the wife of the defendant Lawrence C. Rapalye, a farm known as the Hasbrook farm. This farm, at the time of his death, was subject to a mortgage which he had executed when he bought it, and on which there then remained due, about $4000. Had the testator died, and his will taken effect before 1830, his personal estate would have been the primary fund for the satis-

faction of such a bond and mortgage, and the devisee could have compelled its payment by the executors. (3 *John. Ch. Rep.* 229.) But this rule was totally and expressly changed by the revised statutes; and the devisee of this Hasbrook farm, which is thus subject to a mortgage executed by the testator, must satisfy that mortgage herself, out of her own property, without resorting to the executors of the ancestor, unless there is in this will 'an express direction that such mortgage be otherwise paid.' (1 *R. S.* 749, § 4.) There is nothing in this will, which is claimed to amount to any such direction, except the words, 'I order my executors to pay all my just debts and funeral charges.' From the proof which was introduced of the situation of the testator, and his property, and of his conduct, it seems exceedingly probable that he intended to pay off this mortgage during his lifetime, and to leave the lands to his daughter disencumbered of any such charge. There is also some evidence that in contemplation of his death before the whole of the debt should become due, or could be extinguished by himself, he supposed that he could make provision for its payment without reference to the directions of his will, and that these directions could be carried out by his executors. But even the clearest proof of such a wish or instruction, *dehors* the will, does not amount to an express direction in the will that his executors should pay the mortgage out of his personal estate. I did not understand the learned counsel for the defendant Rapalye, to contend very confidently that the direction to the executors to pay all the testator's just debts, would of itself unaided answer the requirements of the statute. But I was strongly pressed with the argument that in this case the parol evidence might be brought in to construe the words of the testator, and to give to them a meaning which, without such evidence, they would not have. I have given to the subject careful consideration, with a strong desire to give effect, if possible, to what I should find to be the wish of the testator in this particular. But this a court is not at liberty to do, in violation of those settled

rules of construction which are necessary for the security of property, and the certainty of the law; still less may we disregard an emphatic prohibition of a statute, and look for the intention of the testator elsewhere than where the legislature have said it must be expressed, however plainly we may think we can find it. It is difficult to see what bearing parol evidence can have upon the present case. There is no doubt or ambiguity in the clause of the will which is said to be an express direction for the payment of this mortgage. A direction for the payment of all the testator's debts, can neither be made broader nor more precise by any proof of what those debts were, or of what arrangements the testator had made to pay them. The language is clear and distinct, and its meaning cannot be said to become any plainer from the parol proof in the cause. The object of parol evidence in aid of the construction of wills, and the only purpose for which it is admissible, is to determine, not what the testator intended to have written, but what he has written; not what his intention probably was, but what is the intention expressed in his will. (*See Wigram on Wills, p.* 9.) As is well observed by this able writer, the distinction is broad and palpable between evidence which is simply explanatory of the words of the will, and evidence which is applied to prove intention itself as an independent fact. This distinction should especially be borne in mind, when, as in this case, the question is not precisely what intention the will manifests, but, whether the words of the will are, or are not, an express direction, such as the statute requires, for the payment of the mortgage out of the mortgagor's personal estate, before resorting to the land. So far as this depends upon the words of the will, this is not only a question of construction, and the scope and meaning of language, but it is a close and narrow question of compliance with a strict statutory requirement, so that proof of other acts or declarations of the testator, even if proper, would afford us but little aid. The question is not merely what the testator's

intention was, but whether he has declared that intention in the way which the law requires.

In truth the question is rather a question of construction of the statute, than of the construction of the will. The meaning of the words of the will is plain enough. And we may place ourselves in the testator's position by the aid of the evidence in the cause, so far as to see the condition of his property and his family at the time of his death. Then if we reject, as I think we are bound to do, all evidence which merely goes to prove his intention as an independent fact, we are brought to the simple question, whether a general direction for the payment of the testator's just debts, in the language of this will, can be regarded as that express direction, to change the statutory order of marshalling his assets, and to throw the burden from the land upon the personalty, which the statute requires.

It must be observed that the statute does not say that a devise shall be excepted from its operation when the will manifests a contrary intention of the testator. In reversing the existing order of the application of assets to the payment of this class of debts, the statute establishes a general rule; and to create an exception to that rule, it requires a positive and explicit direction in the particular case. I think it would not be giving just effect to the language of the act, nor to its purpose, to hold that a general direction, that the testator's just debts should be paid, is what is intended by an express direction 'that the mortgage' should be paid otherwise than out of land, which the devisee accepts, charged with this burden. It does not seem to me that this general direction that the testator's debts should be paid, is equivalent to an express direction that his personal estate, and not his lands devised, should pay his mortgages. He must be presumed to have known the law, and to have known that its order of subjecting his property to the payment of such a debt as this would be to cast it in the first instance upon the lands themselves. His direction for the payment of his debts, must be construed

Rapalye *v.* Rapalye.

as a direction for their payment, in the order and manner which the law prescribes, and not as any evidence of a desire to change its disposition.

The direction which must be given to exonerate an estate devised, from the payment of mortgages upon it, must be specific, having at least such distinct reference to, if not an explicit and particular mention of, the particular land and its encumbrance, as, without going beyond the will, to furnish express authority to the executors to pay the mortgage out of funds which, otherwise, the law compels them to appropriate in a different way.

Whatever I might think was Mr. Horton's wish or purpose as to the mortgage upon the farm which he devised to his daughter, I cannot find in his will any expression of a purpose to have it paid otherwise than as the statute directs. I must therefore hold that Mrs. Rapalye, as the devisee of this farm, was bound to pay off this mortgage, and that it is still an outstanding encumbrance upon the land.

An interlocutory judgment or order must be entered, declaring the rights of the parties, and referring it to L. G. Dodge, Esq., to take and state the accounts. Upon the coming in and confirmation of his report, final judgment will be rendered accordingly. All parties will be allowed their costs out of the estate."

A judgment was entered, at special term, in accordance with the above opinion; from which judgment the defendants appealed.

*J. Thompson,* for the appellants.

*B. W. Bonney,* for the respondent.

*By the Court,* BIRDSEYE, J. The judgment appealed from must be affirmed, for the reasons stated by the learned judge at the special term. I concur in the views which he has there expressed, and am willing to adopt them as the opinion of this court.

But as two very recent authorities were cited before us which were not before him, it is proper to refer briefly to them. They are *Waldron* v. *Waldron,* (4 *Bradf. Sur. R.* 114,) and *Taylor* v. *Wendel,* (*id.* 324.) They both relate to the third and principal point discussed below, whether the devisee takes the land devised, subject to the mortgage upon it, or relieved from it by a charge of the debt upon the personalty. As I understand those cases, they both sustain the views on which the judgment at special term proceeded. In *Waldron* v. *Waldron,* the intent of the testatrix, upon the whole testamentary scheme, was clearly to make an equal division of her estate. That design could not be effectuated, if the statutory rule should apply. (1 *R. S.* 749, § 4.) The will directed that the executors should pay and satisfy all the debts of the testatrix, "whether on bonds and mortgages heretofore made and executed by me, or which may be hereafter made and executed by me." The learned surrogate held, very properly, in my judgment, that this provision of the will relieved the lands and threw the burden of the mortgage debts on the personal estate. In *Taylor* v. *Wendell,* the same learned jurist says that the provision of the statute above referred to, is never disturbed unless by some clear and express direction in the will. The provision in that will was that, "all the debts and sums of money" which the testator should owe at the time of his decease, were to be paid by the executors. The surrogate said this was merely the usual direction as to the payment of debts, and showed no sign of an intention to modify the statutory rule; and he held that the land devised must bear its own burden.

I agree with the counsel for the appellants, that no particular expression or form of words is necessary to constitute such a direction as the statute requires, that the mortgage be paid in some other manner than by the devisee. Any provision which clearly expresses that intent will, I think, be sufficient. But before it can prevail against the new rule of distribution introduced by the statute, there must appear, from the terms

of the will itself a design to modify the statutory rule; to apply to the particular case in hand a principle different from that which the law has made generally applicable to cases where lands descend, or are devised, subject to a mortgage.

That may be done, by a reference either to the statute, or to the mortgage debt, to be paid otherwise than as the statute directs. It may perhaps be done, in other ways, and by different forms of expression. But the expression which is to take the case out of the statute must be so clear and distinct that it cannot be satisfied by a payment of the testator's debts, in the order and manner which are prescribed by law.

The judgment appealed from must be affirmed, with costs.

