SHELDON *vs.* FERRIS and others.

Where a mortgage is executed, upon leasehold property, by a tenant for life, the same is, upon the death of the mortgagor, payable out of his personal estate, if there be sufficient for that purpose. If there is no evidence to show that any such means existed, and there is no pretense that the payment was made, the mortgage will remain a valid security for the whole sum, and is binding on the property.

When an individual unites in himself the title to such a mortgage, as assignee thereof, and the interest of a tenant for life, he assumes all the obligations and duties which the tenant for life was bound to perform.

And if he enters into an agreement that the property shall not be sold under the mortgage during the lifetime of the tenant for life, this does not necessarily bind him to pay the interest. The condition will be fulfilled by preventing a sale during that period. And if no steps are taken to foreclose the mortgage in the lifetime of the tenant for life, the covenant in no way affects the right of an assignee seeking to collect the moneys due upon the mortgage, after the death of the tenant for life.

The holder of the life estate in the mortgaged premises is bound to pay, annually, the interest accruing on the mortgage, until the estate ceases.

The general rule is that a tenant for life of an equity of redemption is bound to keep down and pay the interest accruing on the bond and mortgage while the same are held by him, although he is under no obligation to pay off the principal.

The absence of a person for eight years, without being seen or heard of, warrants the presumption of his death; and if to this is added the proof of his frequent declarations of an intent to commit suicide, this presumption is strengthened, and will warrant the conclusion that his death occurred about the time of his disappearance.

IN 1835 a lease of a lot of ground in the city of New York was made to two trustees for the benefit of A. A. Mott, then a married woman, for twenty-one years, with two renewals for a like term, and a house was erected thereon. Afterwards the husband of Mrs. Mott died, and she was married again to A. J. Engel. After the marriage she and her husband, with her trustees, joined in a mortgage of the property to Miss Tracy. In November, 1844, Mrs. Engel (formerly Mrs. Mott) died and by will bequeathed this property to her executors in trust to collect the rents, to pay the ground rent, taxes and other expenses arising on the property, and to apply the net income to the use of her husband

Sheldon *v.* Ferris.

during his natural life, and after his decease to sell the same and divide the proceeds among the children of her three brothers, &c. The mortgage executed to Miss Tracy was, by several assignments, in 1860, assigned to the plaintiff. In March, 1848, Adolph J. Engel, the beneficiary under the will of his wife, Mrs. Engel, sold and assigned his interest under the will, including the interest in the house and lot on Henry street, to Alexander Gibbs. Gibbs, in 1850, transferred it to Elmer Thompson, and on the same day Drummond, the executor and trustee under the will of Mrs. Engel, gave Thompson the power to control, lease and collect rents of the premises in Henry street during the lifetime of Adolph J. Engel, upon condition that Thompson should pay all taxes, ground rents, assessments and charges upon the property, during the time, and keep the same in repair and insured, and not to suffer the premises to be sold under the mortgage. In 1851, Thompson assigned the mortgage and the interest in the house in Henry street, and in March, 1860, the bond and mortgage was transferred by the then holder, to the plaintiff. Mr. Engel, the husband, disappeared about the year 1856, and has not since been heard of. No interest had been paid upon the bond for more than fifteen years before the trial.

The case was referred to a referee, who reported in favor of the plaintiff for the amount of the mortgage and the interest thereon, and directed a sale of the premises, but the report was referred back to the referee with directions to add further findings, and on his report the judge at special term ordered judgment and a sale of the mortgaged premises. From this judgment the guardian of the infant defendants appealed.

*G. M. Spier,* for the appellants.

*Geo. Thompson,* for the respondent.

*By the Court,* INGRAHAM, P. J.    The case was originally referred for trial to a referee, and on his report judgment could have been entered without any application to the special term, but as the parties went to the court without objection, and the Judge then ordered the report to be sent to him, we may consider such order a modification of the original order of reference.

The question now submitted to us on this appeal is whether the holder of this mortgage is entitled to recover interest on the mortgage during the life of A. J. Engel, the beneficiary under the will; and whether Thompson, who in 1850 was the holder of the mortgage and of the life estate, was not bound to pay the interest of the mortgage from the rents of the property.

Although this mortgage would have been payable out of the personal estate of the testatrix if there was sufficient for that purpose, there is no evidence to show that any such means existed, and there is no pretense that such payment was made. It therefore remained a valid security for the whole sum, and was binding on the property.

When Thompson became the owner of the bond and mortgage and of the life estate of Engel, in 1850, he entered into the agreement that the property should not be sold under the mortgage. Had the mortgage remained the property of Miss Tracy, there could be no doubt that she would have had the right to collect upon it the whole of the principal and interest. Whatever would have been the rights and obligations of the other parties, her claim remained unaffected thereby. But when Thompson united in himself the title to the mortgage and the interest of Mr. Engel, the husband as tenant for life, he assumed all the obligations and duties which Engel as tenant for life was bound to perform.

This mortgage in the hands of the plaintiff, was only valid to the extent it could have been enforced by Elmer Thompson. When he held the title to the mortgage and the life estate in his own right, if he was bound to keep down the interest

Sheldon *v.* Ferris.

during the existence of the life estate, he could not collect such interest, nor could he by transferring the security to another, regain the right to collect it.

The condition not to suffer a sale during the lifetime of A. J. Engel, did not necessarily render it obligatory that he should pay the interest. It was fulfilled by preventing a sale during that period ; and as no steps were taken to foreclose the mortgage, I do not see that the condition in any way affects the right of the plaintiff, who now seeks to collect the moneys due upon it.

Nor does the objection on the part of Elmer Thompson, or the assignees of the life estate, to keep down the interest on the mortgage, attach to the bond and mortgage after it had passed out of their possession. The equities which might exist when the same person held both the life estate and the title to the bond and mortgage, and which would operate as a payment of the accruing interest on the bond, so long as the obligation existed to pay such interest out of the proceeds of the income of the life estate, (*Mickles* v. *Townsend*, 18 *N. Y. Rep.* 575,) would not continue to affect the bond and mortgage when assigned to another, so as to deprive such assignee of the interest which might subsequently accrue. The period of time from the assignment to Elmer Thompson until the transfer of the bond and mortgage to the plaintiff would however cover the time during which the life estate continued and until after it had expired. We are therefore left to the consideration of the question whether the holder of the life estate in these premises was bound to pay annually the interest which accrued on this mortgage until that estate ceased. That such was the duty of the person holding the life estate I think is sustained by the authorities. The case of *Penrhyn* v. *Hughes*, (5 *Ves.* 99,) is a case in point, and *Story* says, in his *Equity Jurisprudence*, (*vol.* 1, § 488,) the general rule is that a tenant for life of an equity of redemption is bound to keep down and pay the interest, although he is under no obligation to pay all the principal. (4 *Kent's Com.* 83.)

Applying this rule to the present case, the obligation of Elmer Thompson and those who held under him the life estate, down to the time of the supposed death of Engel, required them to discharge the accruing interest on the bond and mortgage while the same was held by them. Some interest had accumulated on the bond and mortgage while held by Miss Tracy. This was a valid claim in her hands, and could be enforced against the property. But when the life estate became the property of the holder of the mortgage, he assumed all the obligations of the beneficiary for whom the estate was created. A court of equity would have required the income of the estate to be applied to the arrears of interest, and the purchaser of the estate was liable to the same equity. This was expressly held in *Penrhyn* v. *Hughes*, (5 *Ves.* 99.) It is there said: "The mortgagee can not be compelled to take possession, but may file a bill for a foreclosure without taking possession. But if he does take possession, he is bound to apply all the rents and profits as the court would distribute them among the several persons claiming interests subject to the mortgage. The plaintiff's possession as assignee makes no difference. Every remedy they had against Pugh, (the owner of the life estate,) they have against any one claiming under him with notice of the charge.

It was said there was no proof of Engel's death. It is true there is no direct proof. But his absence for eight years without being seen or heard of warrants the presumption of his death ; and when to this is added the proof of his frequent declarations of an intent to commit suicide, this presumption is strengthened, and will warrant the conclusion that his death occurred about the time of his disappearance. The testimony of the witnesses fixes this time in 1855 or 1856, and allowing the largest period, the year 1856 should be taken as the time from which interest should be calculated.

There was an error also in not allowing the costs of the infant defendants in the judgment. There should have been an allowance to the guardian *ad litem* for his costs, and we

The People *v.* Taylor.

think the judgment in this case should be corrected by an allowance of one hundred dollars.

Under circumstances of doubt whether the income from the property would be sufficient to pay the arrears of interest, it would be proper to order an account to be taken, but in this case it can hardly be necessary to put the parties to such an expense. The proof as to the annual value of the premises is that it would exceed $500, while the interest on the mortgage is less than seventy dollars per year. We can therefore adjust the amount without the necessity of such reference.

The judgment should be modified by deducting from it a sum equal to the interest which accrued on the bond and mortgage prior to the year 1856, and by adding to it an allowance to the guardian *ad litem* of the infant defendants, of one hundred dollars, and so modified, the judgment is affirmed without costs to either party on this appeal.

[NEW YORK GENERAL TERM, November 7, 1865. *Ingraham, Leonard* and *Sutherland,* Justices.]