## MATTER OF ACKERMAN.

### *In the matter of the Estate of* SUSANNAH ACKERMAN, *deceased.*

An annuitant sixty-six years of age, who had been accustomed to call on the executor regularly and frequently for his money, on which he was dependent for support, left his abode in May, without indicating an intent of remaining absent, and was never afterwards heard from. During the same month he had called and received about half a year's income. His physician testified that at the time when he disappeared he was suffering from incurable disease, under which he could not have survived more than three months. *Held* : That these facts were sufficient to sustain a finding that his death during the fall of the same year might be presumed.

THIS was a motion to confirm the report of a referee appointed to take testimony as to the death of Jacob Ackerman, a legatee under the will of Susannah Ackerman, deceased.

The referee found as matter of fact that said Jacob Ackerman, in May, 1872, then aged about 66 years, left the house of his brother-in-law, Hohokus, with whom he had re-sided about a year, without indicating any intention of remaining absent, though shortly previous he had expressed a wish to go to Baltimore where he had formerly resided with Mrs. Manly and Mrs. Jackson. He was dependent for support upon the income derived under the will of the deceased, amounting to about $300 per annum, and was in the habit of calling upon the executor in New York, at stated periods for the money. The last call was in May, 1872, when he received $142, after which time he made no further demand, and has not been seen by the executor.

Prior to May, 1872, he was broken down in health, and suffering, according to the testimony of his physician, from three progressive, incurable diseases, and the

opinion of the physician was, that he could not have survived more than three months after that date. Diligent inquiry had been made in respect to him, and no information could be derived as to his being alive, nor of his arrival in Baltimore. When he left, he was anticipating the increase of his income, after May 1st, 1872, by reason of the expiration of a long lease held upon property belonging to the estate, and was in the frequent habit of asking the executor for more money.

The referee found that these facts afforded a satisfactory and reasonable presumption of the death of the said Jacob Ackerman, during the fall of 1872.

SACKETT & LANG, *for the petitioner.*

THE SURROGATE.—The only question to be considered is, whether the proof recited raises a presumption of the death of said Jacob Ackerman, at the time when it is found by the referee to have occurred.

In *Oppenheim* v. *Wolf* (3 *Sanf.*, *Ch.* 571) it appeared that Wolf departed from New York for Liverpool, in the steamship President, on the 11th day of March, 1841. The vessel was never afterwards heard from. Wolf's brother, as his general attorney in fact, delivered certain securities belonging to him to the plaintiff, against advances made by the plaintiff to take up certain notes, and in May, 1841, transferred additional securities for the same purpose; and in August, in the same year, on proof of the facts relative to Wolf's supposed death, letters of administration were granted to the Public Administrator on his estate. In discussing the question as to the death of Wolf, the Vice Chancellor said: "The usual time for steam passages across the Atlantic, from New York, has been 14 or 15 days; the longest passages have not exceeded 23 or 24 days. At page 576, he says, referring to the steamer, "the

fact that she had resources of sails and steam, thus doubling her chance of making some port in case of disaster; and the impenetrable cloud that has always hung over her end, lead the mind irresistibly to the conclusion that she must have gone to the bottom before she had been six weeks out of New York; and the strong probability is, that she was lost a few days after her departure."

In *Sheldon* v. *Ferris* (45 *Barb.*, 124) one Engel disappeared about the year 1856, and was not heard from at the time of the trial of the case, and the question arose as to his death, and the time of his death, and Mr. Justice INGRAHAM at page 128 says: "It was said, that there was no procf of Engel's death; it is true there is no direct proof, but his absence for 8 years without being seen, or heard of, warrants the presumption of his death, and when to this is added, the proof of his frequent declaration of intent to commit suicide, this presumption is strengthened, and will warrant the conclusion, that his death occurred about the time of his disappearance. "

In *Merritt* v. *Thompson* (1 *Hilton*, 550), it was held that where an ordinary voyage is four months, and seventeen months elapsed without any tidings of the vessel, the master and crew will be presumed to be dead.

In *Eagle* v. *Emmet* (4 *Bradf.* 117), the general rule is stated to be that a party absent seven years without intelligence of his living, is presumed to be dead, and that the length of time may be abridged, and the presumption applied earlier, by proof of sufficient circumstances tending to show death, within a certain period.

In *O' Gara* v. *Eisenlohr* (38 N. Y., 296), it is stated that it is a general rule that the law presumes the continuance of life, and will not presume death until an absence of seven years, without being heard from.

The proof in this case raises a reasonable presumption that Ackerman died within three months of his departure from Hohokus. The testimony of the physician renders it improbable that he could live long after that time His entire dependence upon the income of the estate in question, his regular and frequent calls for the same before his departure, and his failure to call thereafter, all in my opinion combine to justify the conclusion reached by the referee.

Order accordingly.