LYDIA MILLER, Appellant, *v.* THOMAS MCBLAIN, Executor, etc., Respondent.

D. by his will gave his estate, real and personal, to his wife during her life, and directed that after her death the residue should be divided into twelve parts, one of which he gave " absolutely and wholly," to each of his twelve children. In case any of his children died without issue, he directed that "his, her or their part or parts  *  *  *  shall be divided between the survivors or their heirs, in equal portions." *Held*, that the words of survivorship related to the expiration of the life estate, and the period of distribution; that each child then living took one share absolutely; and so, that the title thereto was not divested by a subsequent death of the beneficiary without issue.

(Submitted March 11, 1885 ; decided March 27, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made April 5, 1884, which affirmed a judgment in favor of defendant, entered upon an order sustaining a demurrer to plaintiff's complaint.

Daniel Dorsey, being possessed of real and personal estate, made his will on the 21st of January, 1823, containing among others, not now material, the following clauses:

"2d.  I give and devise unto my dear wife Eleanor Dorsey, all my estate, real and personal, to be used and enjoyed by her at her own discretion during her natural life." * * * *

"3d.  After the decease of my wife Eleanor Dorsey, whatever may remain of my property of every value and description is to be disposed of as follows, viz. :

"4th.  Whereas I have heretofore advanced to my daughter Elizabeth Riley, the value of $970, and to my daughter Eleanor Naglee, the value of $790, and to my son Andrew Dorsey, the value of $1,500, and to my son Upton Dorsey, the value of $1,460, and to my daughter Deborah Chapin, the value of $470, and to my daughter Delia Rooke, the value of $470 ; now the several sums are all to be added to my estate after the death of my wife, and the whole is then to be divided into twelve equal parts, which I hereby give and devise, absolutely and wholly, one share to each of my children, Deborah, Elizabeth, Eleanor, Delia, Andrew, Upton, Thomas E., Nelson, Lydia, Sophia, Mary and Caleb. If, after such addition, as above directed, is made, and my estate, real and personal, valued, it shall be found that any one or more of the sums above mentioned as advanced shall exceed the twelfth part, still nothing is to be taken from such share.

* * * * * * * * *

"12th.  It is my will and direction that if any of my children aforesaid should die without issue, his or her or their part or parts of my estate shall be divided between the survivors and their heirs in equal proportions.".

By a codicil, Upton Dorsey was excluded from any share under the will, and Caleb died before his mother, leaving no

issue.    Eleanor Dorsey, the wife of the testator, died May 22, 1834.    The real estate was then converted into money and divided into ten shares, and the children, save Upton, each took one part, of the value of $1,800.    Mary Hudson, one of these children, died without issue, September 29, 1881, leaving a will, by which she appointed the defendant, Thomas McBlain, executor of her estate, and as such he took possession of the share or part of the estate of Daniel Dorsey, which had, as above stated, been paid to her.    Upon the death of Mary Hudson, the plaintiff became the sole surviving child of Daniel, and as such brought this action to recover the sum of $1,800 (being the share of the estate of Daniel Dorsey, which had been paid to Mary Hudson), on the ground that under the twelfth clause of the will above quoted, it vested in her.

The defendant demurred to the complaint on the grounds, first, a defect of parties plaintiff, and second, that it does not contain facts sufficient to constitute a cause of action.    The demurrer was sustained at Special Term.

*B. Hammond* for appellant.    By the will of Daniel Dorsey the defendant's testatrix, Mary Hudson, took a determinable or qualified fee in one equal one-tenth part of Daniel Dorsey's estate, which upon her death in 1881, without issue, went, by way of executory devise, to this plaintiff in fee-simple, she being the sole survivor of the children of Daniel Dorsey.    (*Anderson* v. *Jackson*, 16 Johns. 382 ; *Fosdick* v. *Cornell*, 1 id. 440 ; *Moffat* v. *Strong*, 10 id. 12; *Jackson* v. *Staats*, 11 id. 337 ; *Lovett* v. *Buloid*, 3 Barb. Ch. 137 ; *Wilkes* v. *Lyon*, 2 Cow. 333 ; *Jackson* v. *Thompson*, 6 id. 178; *Jackson* v. *Christman*, 4 Wend. 278 ; *Cutler* v. *Doughty*, 23 id. 513 ; *Striker* ˅ v. *Mott*, 28 N. Y. 83 ; *Jackson* v. *Elmendorf*, 3 Wend. 222 ; *Jackson* v. *Merrill*, 6 Johns. 185 ; *Davidson* v. *De Freese*, 3 Sandf. Ch. 456 ; *Vedder* v. *Evertson*, 3 Paige, 281 ; *Sherman* v. *Sherman*, 3 Barb. 385 ; *Lintner* v. *Snyder*, 15 id. 625 ; *Richardson* v. *Noyes*, 2 Mass. 56 ; *Maurice* v. *Graham*, 8 Paige, 483; *Heard* v. *Horton*, 1 Denio, 165.)    The use by the testator of the word " survivors " in the twelfth

clause of his will qualified the technical meaning of the phrase " dying without issue," viz. : implying an indefinite failure of issue, and makes the limitation over take effect upon a definite failure of issue (without issue living at the death of the first taker, Mary Hudson), which is good as an executory devise. (*Anderson* v. *Jackson,* 16 Johns. 382; *Lovett* v. *Buloid,* 3 Barb. Ch. 137.) The words " I hereby give and devise, absolutely and wholly one share to each of my children," apart from any other words, gives to each child the same estate which the testator had, to-wit, an estate in fee-simple. (*Anderson* v. *Jackson,* 16 Johns. 382; *Buell* v. *Southwick,* 70 N. Y. 581; *Tyson* v. *Blake,* 22 N. Y. 558; 2 Hill. on Real Prop. 9; *Oswald* v. *Kopp,* 26 Penn. St. 516.) The giving of a life estate in fee does not destroy the remainder clause, nor does it invalidate the executory devise created thereby. (*Vedder* v. *Evertson,* 3 Paige, 281; *Olivant* v. *Wright,* 1 Ch. Div. 346.) There is no repugnancy between clauses 4 and 12 of the will. The one giving the distributive share to each of the testator's children, " wholly and absolutely," and the other limiting it to a life interest only in case any of the children should die without issue. (*Norris* v. *Beyea,* 13 N. Y. 273; *Theol. Sem.* v. *Kellogg,* 16 id. 83; *Tyson* v. *Blake,* 22 id. 558; *Everitt* v. *Everitt,* 29 id. 83.) A testator may make an absolute gift of his property to a legatee in one clause of his will, and by a subsequent residuary clause, qualify and limit the gift to a mere life estate, giving the fee or remainder to others. (*Taggart* v. *Murray,* 53 N. Y. 233; *Chrystie* v. *Phyfe,* 19 id. 344.) The use of the word " survivor " in clauses of this character, whenever used by a testator in connection with " death without issue," shows conclusively the intention of the testator that in the event of the first taker's dying without issue the share should go to those then surviving. (*Campbell* v. *Beaumont,* 91 N. Y. 467; *Dossee* v. *Mullick,* 6 Moore's Ind. App. 526.)

*A. P. Rose* for respondent. When no clearly-expressed intention can be ascertained from the will, the courts will always construe words of survivorship to refer to the death of the

testator. This is only departed from when it manifestly appears that the words refer to some other event than the death of the testator. (*Stephenson* v. *Lesley*, 70 N. Y. 512; *Gee* v. *Manchester*, 17 Q. B. 737; 16 Jur. 758; 21 L. J. Q. B. 242; *Apsey* v. *Apsey*, 36 L. T. [N. S.] 941; *In re Mahan*, 32 Hun, 73, lately affirmed by this court.) The expressed intention of the testator seems to be to make the death of his widow the period of distribution, and that the words of survivorship are used in reference to that period. The shares of the children, therefore, vested in them absolutely on the death of their mother, in 1834, and there is thereafter no remainder on the death of any. (*Adams* v. *Beekman*, 1 Paige, 633; *Olivant* v. *Wright*, L. R., 1 Ch. Div. 346; 45 L. J. Ch. Div. 1; 33 L. T. [N. S.] 457; 24 Weekly Rep. 84; 2 Bigelow's Jarman on Wills, 789.) After the death of his wife, the testator's property was to be "disposed of as follows," viz.: one share was given "absolutely and wholly" to each of his children. These words are amply sufficient to pass a fee in real estate, even before the Revised Statutes. (1 Washburn on Real Prop. 59; *Jackson* v. *Housel*, 17 Johns. 281.) The words of survivorship do not refer to the death of each child, respectively. (*Moffat* v. *Strong*, 10 Johns. 12.) If the court shall hold that the words of survivorship do not refer to the time of the death of the testator or the death of his widow, then the limitation is unlawful and void. (1 R. S. 724, § 22; *Beaumont* v. *Campbell*, 91 N. Y. 468; *Patterson* v. *Ellis*, 11 Wend. 259; *Ide* v. *Ide*, 5 Mass. 502; *McDonald* v. *Walgrove*, 1 Sandf. Ch. 274; *Lott* v. *Wycoff*, 2 N. Y. 355.)

DANFORTH, J. The important question raised by the demurrer was whether Mary Hudson, at the time of the death of the wife of the testator, took an absolute interest in the estate devised, or whether, on her dying without issue, her share went to the plaintiff, as the survivor of the children of the testator. So far the defendant has succeeded, because in the opinion of both courts, Mary Hudson, having survived the life tenant, was entitled to the share absolutely. It seems obvious that a differ-

ent construction would not only suspend the absolute vesting of the gift during the whole life of the legatee, but could be reached only by disregarding the expressed intention of the testator. His words are plain enough. By the second clause of the will his estate is to be kept together for the enjoyment of his wife until her death, and by the third clause, upon the happening of that event, whatever may remain is to be disposed of, not contingently, but " absolutely and wholly." There is to be a division at that time into parts corresponding to the number of his children, and one part or share is at once given or devised to each child, and, providing against an event which might occur before the death of the life tenant, and therefore, before the period of distribution, the testator directs by a subsequent clause (12), that if any of his children should die without issue, his or her part " should be divided between the survivors and their heirs in equal proportions." We can find in these words no other intention than that expressed by the testator, that the division or distribution should then, at least, be effective and final. Nor is any expectation disclosed on his part, that on account of a subsequent event — the death of a child without issue — the estate shall be divested, or that there shall be an accounting by its representatives in regard to the share taken, or that it be distributed among such children as survivors, or, as in this case, to the one surviving. We think it clear that the words of survivorship relate to the expiration of the life estate, and the period of distribution.

It follows, therefore, that the death of Mary Hudson, without issue, vested no estate in the plaintiff, and as the complaint states no other right or cause of action, the demurrer was well taken, and the judgment appealed from should be affirmed.

All concur.

Judgment affirmed.