Merwin, J. [After stating the facts as above.]
The first question to be determined is whether the grandchildren have an absolute estate in fee in the premises given them respectively. That depends on the construction to be given to the expression in the will “ in case any of my grandchildren named above die leaving no issue.” Does that refer to a death at any time, or is it limited to a death before *14 that of the testator, or of the testator’s wife % The devise in the first instance is in effect absolute. Then a provision is made for a contingency. It is made a devise upon condition. At the death of the widow it is to be divided unconditionally. But the contingency of the death of any one of the devisees without issue, is provided for. In that case, the premises “ described as given them ” shall be sold,' and the proceeds divided equally “ among my.grandchildren then living.” The expression “ then living,” in view of the context, refers more naturally to those living at the death of the widow. The expression “ described as given them,” carries with it the idea that the death referred to is one that must have occurred before the gift so given was consummated, before the time of division, to wit, the death of the wife, had arrived.
The general rule is that, where a remainder over is provided for in case of the death of a devisee or legatee, the will is construed to mean his death during the lifetime of the testator, unless there are 'controlling provisions to the contrary, or from the whole tenor of the will it is evident that the intention was otherwise (Leonard v. Kingsland, 12 Daly, 485, and cases cited). In Kelly v. Kelly (61 N. Y. 47). the rule was strongly affirmed in favor of the absolute vesting of the estate at the time of the death of the testator. It is said that the policy of the law is to construe estates as vested instead of contingent, when there is any doubt (Stevenson v. Lesley, 70 N. Y. 512).
In Miller v. McBlain (98 N. Y. 517), there was a life estate; then, upon its termination, a devise, in form, absolute, and then a, provision that in case any of the devisees 'should die without issue, “ their share should be divided equally between the survivors and it was held that the words of survivorship related to the expiration of the life estate and period of distribution, and that each devise then to be an absolute estate, and was not divested by a subsequent death of the beneficiary without issue. This case controls, I think, the present one. The case of Nellis v. *15 Nellis (99 N. Y. 505), is not adverse, as that is decided on the theory that a condition was attached to the devise, which is not the present case. It is, therefore, my opinion that the devises in the present case became absolute at the death of the widow.
A question is made about the two mortgages given by the testator in his lifetime, and since liis death assigned to the widow.
It is claimed by the devisees upon whose lots the mortgages are liens, that the widow made a valid agreement with her husband before his death, to take up those mortgages with moneys of her own, in consideration of certain benefits she should receive under his will, which was thereafter made.
To prove this agreement, the defendant, Lizzie L. Brace, is called as a witness. She testified that she lived with her grandfather and grandmother, when the will was made ; that a few days before the will was made, she heard a conversation between them “ with reference to making his will; they were speaking about how he should arrange matters, and give her the control of his property; he wished her to take his money ; he asked her if she would be willing to take her insurance money and pay these mortgages, so that these mortgages on the children’s property would be free to them, and she said she would; he called me into the room and asked me to go for Mr. Adams, and he asked grandmother, before Mr. Adams, to pay out this money to pay these mortgages, and she said she would; he wanted Mr. Adams to be a witness to the fact. Q. Do you recollect whether there was anything said as to her having the use of his real estate ? A. Yes, sir. Q. "What was it? A. That was one of the provisions that she was to have the use of everything except the house that my father lived in at Castile during her lifetime; he asked her if she would be satisfied if he gave her the use of everything during her life, and she said yes, and then came up the subject of these mortgages, and he asked her if she would discharge these *16 mortgages against this property; she stated before Mr. Adams that she would do this.”
Turning to the will we find a special provision for the payment of these mortgages ; an amount of specific property equal to the mortgages, and more is placed in the executor’s hands in trust for that specific purpose, the balance, after paying the mortgages and other matters there referred to, to be paid to the wife.
This provision is entirely inconsistent with the idea that there was then any existing agreement by which the wife was to pay these mortgages out of her own money.
So that, if there was any such agreement, it was abandoned before the will was made. There is no evidence that there were any other mortgages except the two that were assigned to the widow." The fund provided for this payment failed, and had to be used for the payment of debts generally.
I don’t think there was any valid agreement on the part of the widow to pay these mortgages. She, therefore, had a right to take an assignment of them, and they have never been paid or discharged. The subsequent discussion or negotiation about a discharge amounts to nothing, as long as it was not consummated.
I am, therefore, of the opinion that the mortgages are valid in the hands of the estate of Mrs. Lewis. Interest, however, is not to be claimed on them only from the time of Mrs. Lewis’ death. She, as tenant for life, was bound to keep down the interest (Sheldon v. Ferris, 45 Barb. 124, 127).
The question then arises whether the devisees, on whose premises the mortgages are, have any remedy against the other devisees for any portion of the mortgages. The $1,000 mortgage only covers the lots devised to Elizabeth L. Cole. The $600 mortgage covers the lots devised to Lorenzo L. and Henry G. Cole.
Had the fund provided in the will not been absorbed in the payment of ordinary debts, the mortgages would have *17 been paid. Can the devisees, for whose benefit this fund was provided, have the benefit of the lien or charge, that this fund has operated to remove from the whole real estate by the payment of debts that would otherwise have come upon the whole real estate ?
A mortgage given by a testator upon real estate devised, must be satisfied by the devisee out of his own property, “ unless there be an express direction in the will of such testator, that such mortgage be otherwise paid ” (3 R. S. 7 ed. 2205). Under this it has been held that no particular expression or form of words is necessary to constitute such a direction, as the statute requires that the mortgage be paid in some other manner than by the devisee; that any provision which clearly expresses that intent is sufficient (Rapalye v. Rapalye, 27 Barb. 610, and see Waldron v. Waldron, 4 Bradf. 114).
The provisions in the present will, providing for the payment of the mortgages out of certain personal property, clearly show an intention on the part of the testator that the-mortgages should not be paid by the devisees. It is, in fact,, an express direction to the contrary. So I think, as between, all the devisees, the mortgages are to be treated like ordinary debts, and if not paid out of the personal property or-the other real estate, are chargeable upon the real estate-devised to the grandchildren, each parcel bearing a share-proportionate to its value. This will carry out the clear-intent of the will.
This I think disposes of all the questions raised., N'o-question is made about the right of the plaintiff to bring-this action (Bailey v. Briggs, 56 N. Y. 407).
[Concluding with directions as to costs which are omitted here.]