Ransom, S.
—The deceased died in New York, January 23, 1884. Letters of administration were issued to the public administrator March 3, 1884, and on July 3, 1885, a decree was made directing the cash balance of the estate to be paid to the four brothers and sisters of deceased, viz: Michael Tobin, Ellen Cooke, John Tobin and Mary Molloy. The first two received their shares; and as John Tobin and Mary Molloy did not apply for their distributive shares within two years after the decree was made, the moneys have been paid into the city treasury. Michael Tobin, the petitioner, now asks to have one-half of the moneys which constitute the distributive share of John Tobin and Mary Molloy paid to him for the reason that they died without issue prior to the death of deceased.
The facts that appear from affidavits accompanying the petition are substantially that, about eighteen years ago, John Tobin and Mary Molloy left Ireland together with the intention of going to Australia, and were, at that period, about twenty-five and twenty years of age respectively; that John was unmarried, but Mary’s husband accompanied them; that she had no children; that said John and Mary have not communicated with any of their relatives in Ireland since they left; that Mr. Carr, attorney for petitioner, caused to be inserted in the Melbourne Argus in 1885, once a week for three weeks, an advertisement directed to the attention of John Tobin; and he also caused to be inserted in the Sidney Morning Herald in 1885, once a week for three weeks, an advertisement directed to the attention of Mary Molloy; that he received no letters or communication from any one claiming to be Mary Molloy, or the husband, or child, or descendant, or relation of said *750 Mary Molloy, but that he did receive letters from five persons claiming to be John Tobin, or a relative of his:
1. John Tobin, of Muldon, Victoria; 2. John Tobin, of 54 Charles street, Prahan, Victoria; 3. Mary Tobin, widow of John Tobin, of Lime-kilns, near Bathurst Colony, N. S. W.; 4. Ann Tobin, sister of John, of Melbourne, Victoria; 5; Édw. P. Tobin, of Kempey, N. S. W. That none of the parties mention in their communications the name of Mary Molloy, or gave the correct names of John Tobin’s father and mother.
The only question to determine is, whether the presumtion of the death of John Tobin and Mary Molloy in Australia, and the fact that they left no lineal descendants, can be sustained by the facts as set forth.
Where one of the next of kin of- the decedent, who was entitled to a distributive share of his estate, left her domicile of origin in New York, and went to reside near Baltimore, and had not answered letters of her mother and sisters, for about twelve years years previous to the death of decedent, it was held that the administrator of decedent was not justified in paying her share to her sisters, without making inquiries at the last known place of residence of the absentee to ascertain whether she was living or dead; and that, where a person has not been heard from in seven years, and when last heard from, he was beyond the sea, without having any known residence abroad, the legal presumption is that he is dead. McCartee v. Camel, 1 Barb. Ch., 456.
I do not think the petitioner has fully complied with the requirements of McCartee v. Camel. There must be further evidence presented to the court, as will be hereafter explained.
Where a person was absent for eight years, without having been seen or heard of, he will be presumed to be dead; and if to this is added the proof of his frequent declarations of an intent to commit suicide, the presumption is strengthened and will warrant the conclusion that his death occurred about the time of his disappearance. Sheldon v. Ferris, 45 Barb., 124.
A party absent seven years, without intelligence, is presumed to be dead. Eagle v. Emmet, 4 Brad., 117.
The above case, also holds, as in Sheldon v. Ferris (supra), that even this time may be abridged by special circumstances.
There is an exhaustive discussion and collation of cases on this point in Lawson on Presumptive Evi. (p. 200, et. seq.).
If the court is informed upon one other point, the authorities will sustain the petitioner’s contention that John *751 Tobin, Mary Molloy and her husband must be presumed to be dead. I shall refer to but a few of the cases: Whiting v. Nicholl (46 Ill., 235), where a man had not been heard from since 1852, and was presumed to be dead in 1859; Clarke v. Canfield (15 N. J. Eq., 119), where E. had not been heard from since 1849, and was presumed to have been dead in 1856; Burr v. Sim (4 Whart., 150), where J. sailed from New York to Europe in 1791,. and nothing was subsequently heard from him, it was presumed he continued to live till the expiration of seven years from the day he sailed from New York.
Hopewell v. De Pinna (2 Camp., 113), where a man went to Jamaica twelve years before the trial, he was presumed to have been dead after seven years absence.
Dean v. Bittner (77 Mo., 101), where S. disappeared at an unknown date in the year 1809, he was presumed to have been dead on April 29, 1816.
Where a person goes abroad and nothing is heard from him by those who, if he were living, would be likely to hear from him, the presumption of his life ceases after seven years. Wood’s Pr. Ev., 182, and cases cited.
The presumption that the persons died without issue will be sustained'by very slight proof, such as failure to hear of any such issue, or failure to answer advertisements calling for heirs, etc. Greaves v. Greenwood, L. R., 2. Exch. D., 289.
Prom a careful study of the authorities cited, and many others, I am of the opinion that the mere absence of the parties for a period of seven years will not raise the presumption of their death, unless relatives and others who would naturally hear from them have not so heard. The evidence in this case is not of sufficient strength to warrant-the granting of the prayer of the petitioner.
I will give him the opportunity to present further information to the court as to the friendly relationship existing between himself and his brother and sister at the time of their departure from Ireland; if they had parted in anger, or if there had been any strained or inimical feeling between John, Mary and their friends and relatives, and if they, or Mary’s husband, could not read and write. These facts would take the case out of the rule as abpve stated. If possible, also, the court would like further information which would tend to locate John and Mary in Australia or elsewhere. As the evidence now stands, there is not even the presumption that they ever arrived or even started for Australia; they are just as likely to be in America or Japan. The facts that the advertisements were not answered would seem, in my mind, not to raise the presumption that they died in Australia, but that they never went *752 there. As the evidence now stands, we have simply proof of a purpose to go and not the actual going. If cousel can satisfy the court by further evidence, in the shape of affidavits of petitioner, his sister and other relatives and friends of John and Mary, that the relation and feeling existing between them all was such as should exist between brothers and sisters and other near relatives, as son and daughter to a father and mother, at - the time of their departure from Ireland, I should be strongly inclined to make a decree directing the distribution of the shares of John and Mary, as prayed for in the petition.
As the motion now stands, I must deny it, with leave to petitioner to renew his application upon complying with the above suggestions.