(20 Misc. Rep. 247.)

### KARSTENS v. KARSTENS et al.

(Supreme Court, Special Term, New York County. May, 1897.)

1. PRESUMPTION OF DEATH.
     Where a son, after the death of his father, knowing of a provision for him in his will to take effect on the death of his mother, leaves home, and is not heard from for 14 years, he will be presumed to be dead.

2. WILLS—CONSTRUCTION—VESTED ESTATE.
     Testator provided for the division of his estate into three parts on the death of his wife, one-third each to his sons A. and B. and the other third to be divided between two other sons. The will devised the shares of A. and B., "to have and to hold the same unto them respectively, their and each of their heirs and assigns forever." Held, that A. and B. took a vested interest upon the death of their father, the enjoyment thereof being postponed until the death of their mother.

Action by Henry Karstens against Catherine Karstens and others to construe a will.

Ronald K. Brown, for plaintiff.

Weller & Davison, for defendant Catherine Karstens.

RUSSELL, J. Upon this application to the court for the construction of the will of Gerhard H. Karstens, the main controversy arises between the plaintiff, who is a son of the deceased, and his sole surviving executor and trustee, and the defendant Catherine Karstens, who is the widow of another son, Herman Karstens, deceased. That question is whether Catherine Karstens takes the portion which would have been the share of her husband, Herman Karstens, if he had lived, or whether that share goes to the plaintiff as the sole surviving son of the testator. The material parts of the will are here quoted, the wife Catherine therein referred to being the surviving wife of the testator, and the mother of the four sons, and who died in the year 1894:

"Second. I give and bequeath unto my beloved wife, Catherine, all my household furniture, beds, bedding, silver and plated ware, and all other household

goods and chattels of whatever nature and description, to have and to hold the same unto her forever. Third. I give, devise, and bequeath unto my trustees, hereinafter mentioned, all the real, leasehold, and personal estate which I may die seised and possessed of, or in any way entitled to, and wheresoever the same may be situated at the time of my decease. To have and to hold the same unto them and the survivors of them, to, for, and upon the following uses, trusts, intents, and purposes, and to and for no other use, trust, intent, or purpose; that is to say: In trust, in the first place, to take possession and charge of my said real, leasehold, and personal estate, to rent out my said real and leasehold estate, and invest the same, and keep invested my said personal estate, upon good and sufficient security, and pay over the rents, profits, interest, and income of my said estate, after first deducting therefrom all taxes, assessments, insurance, repairs, and other legal necessary payments and expenses, unto my beloved wife, Catherine, for and during her natural life. In trust, in the second place, upon the decease of my said wife, to divide my said estate into three equal parts or shares, and to pay over unto my sons Herman N. Karstens and Henry Karstens each one equal part or share thereof; to have and to hold the same unto them, respectively, their and each of their heirs and assigns forever, and to invest and keep invested on bond and mortgage upon good and sufficient real estate in the cities of New York or Brooklyn one equal part or share thereof, and to keep the same so invested during the natural life of my sons John Karstens and Albert Karstens, and to pay over and divide the interest and income thereof equally between my said sons John Karstens and Albert Karstens. And in trust, in the last place, upon the decease of them, and each of them, leaving issue him or them surviving, to pay over unto said issue the parent's part or share, and, if more than one issue, then in equal proportions. Lastly. I do hereby nominate and appoint my said wife, Catherine, the executrix of, and my friend Ernest O. Korner the executor of, this, my last will and testament, and also my son Henry as executor thereof, when he shall have arrived at lawful age; and I do constitute my said wife and the said Ernest O. Korner and the survivor of them trustees and trustee under this my will, and also my said son Henry an additional trustee when he shall have arrived at lawful age, for all and every of the trusts, purposes, and provisions herein expressed and declared, and I do hereby authorize and empower them and the survivor of them, for the purpose of dividing my said estate, to sell and dispose of the same, either at public or private sale, and to execute and deliver to the purchaser or purchasers thereof good and sufficient conveyances and transfers in the law for the same."

It is conceded that the son Herman Karstens died August 12, 1891, about three years before the death of his mother, so that he never came into the possession and enjoyment of any share of his father's estate. It has been also satisfactorily proven upon the trial that Albert died three years before the death of Herman, at the Soldiers' Home at Washington, though passing under the name of James Welch. No argument has been made upon the proofs by either counsel, or authorities cited, with reference to the presumptions as to the death of John Karstens. But as the facts as to the probability of his death have been proven, I am obliged to pass upon that question, as it is material in this case. The testator, John's father, died in the year 1869. John must have known about the property which he left, and the provisions of the will for his benefit upon the death of his mother, and have been possessed of the natural expectations incident to such prospect. He left the home of his mother more than 20 years before the trial, and thereafter but little was heard about him; the last that any member of the family had any information of his whereabouts or life being in 1883. Thus, though impelled by the strong and controlling motives to make himself known, if living, of affection, family ties, and hope of gain in pecuniary ad-

vantage, he is silent for 14 years or more, which silence would presumably not have continued in view of the interests drawing him to his brothers and mother, and old home, and the property in which he had a contingent interest, if he was alive.    Under such circumstances we may fairly presume him to have died, and such view is sustained by the authorities.    In the case of Davie v. Briggs, 97 U. S. 628, absence of seven years was deemed sufficient.    See page 633.    See, also, the following cases, where different periods under the circumstances were held sufficient for a presumption of death: Clark v. Owens, 18 N. Y. 434; Sheldon v. Ferris, 45 Barb. 124; King v. Paddock, 18 Johns. 141.    The theory is also sustained by kindred legislative action.    Code Civ. Proc. § 841; Pen. Code, § 299.    No information was ever received of the marriage of John Karstens; no claimant has ever appeared as his wife or child, or descendant; and we may reasonably infer that the same motives of pecuniary interest, if not of the ties of affinity, would have actuated any person who might claim through John Karstens to make known his existence, as would be natural in his case were he living.    His last known state being that of a man without any marriage tie, the presumption of the continuance of that state is fortified by the attendant circumstances.    We may therefore consider the plaintiff, Henry Karstens, and his sister-in-law, Catherine Karstens, as the sole surviving claimants to the estate, although the plaintiff's counsel, in his supplemental memorandum, for the first time expresses some doubt as to the proof of the death of John Karstens.    He seems to have acted upon a different theory in framing his cause of action, for he did not name John Karstens as a party, although he would have had an interest if living.

The argument of the plaintiff's counsel, seeking to gain for his client the whole of the estate to the exclusion of his brother's widow, is that the provision for the sons contained in the will was for the benefit of a class, and that the death of either before the mother's death carried his portion into intestacy, because the provisions for the benefit of all the sons vested no estate in any of them until the death of the mother, in distinction from a case where the vesting took place upon the death of the testator, and the right of enjoyment merely was deferred.    It is undoubtedly the rule that where the testator plainly makes no gift to his beneficiaries, but provides for their enjoyment of a portion of his estate on the happening of a contingency, such beneficiaries do not take a vested interest upon the death of the testator.    Shipman v. Rollins, 98 N. Y. 311; Smith v. Edwards, 88 N. Y. 92.    But this is a rule to which resort must necessarily be had in the absence of any significance of a contrary intent indicated by the testator; and where such a different intent is manifest from the will the vesting takes place at once upon the death of the testator, however long the enjoyment is postponed.    In re Young, 145 N. Y. 535, 40 N. E. 226; Goebel v. Wolf, 113 N. Y. 405, 21 N. E. 388; Warner v. Durant, 76 N. Y. 133.    And in the very case cited of Smith v. Edwards, supra, relied upon by plaintiff's counsel, where the court of appeals held that the postponing of the vesting of the estate, as to a large part of the property affected, rendered parts

of the will invalid as unduly suspending the power of alienation, it still held that another clause giving to each grandchild born within 20 years, and before the final settlement of his estate, the sum of $1,000 to be paid to each on reaching full age, or if a granddaughter, upon her marriage, did not unduly suspend the absolute ownership, and that the bequests were valid. It is necessary, therefore, to scrutinize the terms of the will in order to determine the intent of the testator. It is conceded by the plaintiff's counsel, and is plain from the contents of the will, that the testator had unequal regard for his sons, Herman and Henry being the favorite ones and John and Albert subordinate in interest. The last-named sons, either from the testator's knowledge of their character or from some other cause, were intentionally given a lesser interest in his estate, and the interest so given them was only for a life tenure. He desired his wife should have the income of his property during her life. It became necessary to provide in the will where the property should go at her death, because of the unequal distribution among his sons, who were his next of kin and heirs. He provides for the division of the estate at the death of his wife into three equal parts, one-third to Herman, one-third to Henry, and the other third to John and Albert for their natural lives; and, in case of their respective deaths leaving issue, the parent's share was to go to such issue. The provision as to the division of the estate being deferred until the death of the wife was made to preserve it as a whole for the income of the wife during her life. It could not be divided, and portions given to any of his sons, and still be used as a whole to produce an income for the widow. His expectation undoubtedly was that Herman and Henry would, in the natural course of human events, survive their mother, and with that probability in view he gives them two-thirds of his estate on her death, emphasizing the gifts by the habendum clause, "To have and to hold the same unto them respectively, their and each of their heirs and assigns forever." There is no distinction of favor between Herman and Henry, and it cannot be presumed that an unlooked-for contingency of one of them dying before their mother was designed by the testator to effect a diversion from the representatives of the deceased brother to the surviving brother, the possibility of knowing which one would survive being, of course, entirely unknown to the testator. If the construction of the plaintiff's counsel be correct, there being no provision in the will for the contingency of the death of one of the two sons, or that the share of such a deceased brother should go to his descendants, if Herman had left children, the force of such construction would take away from those children the most of the third part given by the testator for the benefit of their father, and revert it to the surviving brother, who had already received an equal share, and to the other brother, who did not stand high in their father's favor. Such a construction is plainly antagonistic to the wishes of the testator, who in no way indicated a desire to have the share of either Herman or Henry pass by remainder over or reversion, under any contingency, to the other brother. This view is still further fortified by the provisions in regard to John and Albert. The argument that the testator made a

class provision for his four sons is destroyed by the distinctive provision for John and Albert, giving to them but one-half what he gave to the other sons; by limiting their enjoyment to that of a life income of the profits, subject to the continuance of the trust, as to a third of his estate; and by his distinctive provision that their issue should receive the remainder over of their shares upon their respective deaths. Is it possible that this testator should wish to continue to the descendants of the sons for whom he had the least regard the lesser benefits provided in his will for those sons, and leave them the absolute title to their fathers' shares, which those fathers had enjoyed only for life, and yet as to either one of his favorite sons, and which one not being distinguishable, he chose by his will to limit their benefits to the contingency of their surviving the mother, and destroyed the descent or distribution to their children? The true construction of this will is that Herman and Henry received a vested interest upon the death of their father, the testator, the enjoyment thereof being postponed until the death of their mother; and so Catherine, now succeeding to the interest of her deceased husband by his will, and Henry, take the two-thirds of the estate by force of the will. By the deaths of John and Albert the one-third reserved for their use goes into intestacy. Henry and Herman having survived their father, they had a vested reversion in the interests of John and Albert, and the interest of Herman was lawfully passed by him through his will to his wife, Catherine, so that each, Henry and Catherine, are tenants in common of the entire estate.

I assume from the proof and the pleadings, so far, that there has been no sale of the realty; nor do I see from their ownership any necessity of the trustees selling that real estate, and dividing the same. Unquestionably he has power to do so, and, unless counsel for Catherine have objections to his selling the real estate and dividing the proceeds, with a division of the personal estate, it is perhaps better that this should be done to save the possible expenses of partition. Such a direction will be incorporated in the judgment herein unless objection be made; and, if the defendant Catherine does object, this question will be further considered by the court.

Ordered accordingly.