In the Matter of the Application of the UNITED STATES MORTGAGE AND TRUST COMPANY, as Executor, etc., of EMMA J. STOREY, Deceased, for a Construction of the Will of EMMA J. STOREY, Deceased.

Surrogate's Court, Kings County, September 13, 1929.

*Samuel Conrad Cohen*, for the petitioner.

*Osborn, Fleming & Whittlesey* [*George N. Whittlesey* of counsel], for the respondent Gladys Storey Kip.

*John de Raismes Storey*, respondent in person.

*Thomas A. McGrath*, for the respondent Frank de R. Storey.

*Harold St. L. O'Dougherty*, special guardian.

WINGATE, S. This is an application for a construction of certain paragraphs of the will of Emma J. Storey which was admitted to probate in this court on March 20, 1929.

The will was executed on July 12, 1927. So far as here material, it provides as follows: The first five items direct the payment of debts, etc., and give specific bequests of enumerated personal property to designated children and grandchildren.

By item " Sixth " testatrix devised property known as " Homelot " at Amagansett, Long Island, in trust for her daughter Gladys with remainder to all of decedent's grandchildren living at the time of such daughter's death.

Item " Seventh " reads as follows:

" I give and devise the real property belonging to me and known and designated by the street number 1070 East 28th Street, Borough of Brooklyn, City of New York, and all moneys which may still be due me at my death on two certain first mortgages held by me, one on property situated on the west side of East 93rd Street, 125 feet north of Clarkson Avenue, and the other on property situated on the west side of East 93rd Street, 225 feet north of Clarkson Avenue, in the Borough of Brooklyn, City and State of New York, aggregating $15,000, to my Executors and Trustees hereinafter named, and the survivor of them, or to the successor thereof, IN TRUST, during the life of my son FRANK DE RAISMES STOREY, to permit my said son to use and occupy said premises at No. 1070 East 28th Street, Borough of Brooklyn, City of New York, and enjoy the net rents, issues and profits therefrom and income from said mortgages, or on the re-invested principal thereof, for and during the term of his natural life, and upon the decease of my said son, to divide said property, both real and personal, share and share alike, among all my grandchildren living, at the decease of my said son, and I hereby devise and bequeath such shares accordingly. In case of a sale under the provisions of this Will of the real estate of said trust property or any part thereof, I direct that the proceeds of said sale shall be included in said trust.

" It is my intention under this paragraph of my Will, to provide for the support and maintenance of my said son FRANK, and in accordance therewith, I leave it to the discretion of my Executors and Trustees to pay over only so much of the income derived from the property bequeathed and devised under this paragraph of my Will as shall be necessary, in their estimation, for his support. The balance remaining of the income over and above the amount necessary for the support of my said son, shall be used during the lifetime of my said son FRANK for the support, maintenance and education of the children of my said son FRANK.

"It is likewise my intention that my said son FRANK shall be permitted to use and occupy the premises No. 1070 East 28th Street, Borough of Brooklyn, City of New York, hereinbefore devised, during his life. Should he, however, not desire to use and occupy the said premises, then I direct my Executors and Trustees to rent, sell, mortgage or otherwise dispose of the said property. Should the property be rented, then after paying all the expenses of taxes, assessments and other charges, they are to apply the income as herein provided; should my son FRANK consent to a sale of the aforesaid property, then they are to invest the proceeds and apply the income, rents and profits therefrom as is also herein provided."

By item " Eighth " testatrix devised her " shore front property " at Amagansett, Long Island, to her trustees in trust to sell and divide the proceeds into three shares, the income from which was to be paid to her three children, John, Gladys and Frank for life, with remainders over to decedent's grandchildren on the deaths of the respective life tenants.

Item " Ninth " reads as follows:

" I give, devise and bequeath all the rest, residue and remainder of my estate, including all the other property, real, personal and mixed, which I may own or be entitled to dispose of at the time of my death and which shall include any of the foregoing legacies or devises which may for any cause lapse or fail to take effect, to my Executors and Trustees hereinafter named and the survivor of or successor to them, IN TRUST, for the following purposes, that is to say:

" To collect and receive the rents, issues and profits and income thereof, and after deducting therefrom the necessary costs and expenses of the maintenance and management of my said trust estate properly chargeable upon the said income, to pay off any moneys I may owe upon mortgages upon the property held by me at No. 1070 East 28th Street, Borough of Brooklyn, City of New York herein devised in trust for the benefit of my son FRANK DE RAISMES STOREY; thereafter to pay off any indebtedness I may owe upon two certain bonds and mortgages aggregating $15,000 hereinbefore devised in trust for the benefit of my son FRANK DE RAISMES STOREY; to pay the taxes and interest on mortgages on the shore front property at Amagansett, Long Island; to pay the taxes upon the property held by me at Amagansett, known as ' Homelot ' and hereinbefore devised in trust for the benefit of my daughter Gladys. After the payment of the foregoing, to divide the income, rents and profits from the principal of the trust

hereby created under this paragraph of my Will, and to divide the same into two equal parts and pay over as follows:

" (a) One part thereof to my son, JOHN DE RAISMES STOREY, during the period of his natural life. Upon his death, to pay from the income of said fund, the sum of Four hundred ($400) Dollars per year to DAVID ANTHONY STOREY, the son of my son JOHN, during the term of his natural life. Upon the death of my son JOHN, the principal of the trust made in this paragraph of my Will for his benefit with the exception of so much thereof as may be necessary to provide the Four hundred ($400) Dollars per year necessary to pay to DAVID ANTHONY STOREY, the son of my son JOHN, shall be paid over to such of my grandchildren as shall be living at the time of the death of my said son JOHN. The balance of the principal necessary to provide the income of Four hundred ($400) Dollars per year to DAVID ANTHONY STOREY, who is not my grandson, shall upon the death of the said DAVID ANTHONY STOREY, likewise be paid over to such of my grandchildren as shall be living at the time of the death of my son JOHN.

" (b) One part thereof to my daughter, GLADYS DE RAISMES STOREY KIP, during her natural life and upon her death, the principal necessary to provide the income hereof, shall be divided amongst such of my grandchildren as shall be living at the time of the death of my said daughter."

The " Tenth " and " Eleventh " items provide for the manner of distribution among the remaindermen and for the powers of the executors, while the " Twelfth," which is in the nature of an *in terrorem* provision, nullifies the provisions in favor of any person bringing " suit to nullify, change or attack " the will. The " Thirteenth " appoints executors and trustees.

The questions on this application for construction which is initiated by one of the executors are directed to the validity of item " Ninth," and if it or any part of it be declared invalid as to the effect, if any, upon items " Sixth," " Seventh " and " Eighth." A determination is further prayed as to the effect, if any, resulting from the *in terrorem* clause in consequence of this application for construction.

Testatrix was survived by three children, five grandchildren and a boy adopted by one of her sons. At the time of her death her property consisted of two parcels of real estate not specifically mentioned in the will, the premises on East Twenty-eighth street, Brooklyn, referred to in items " Seventh " and " Ninth," and the " Homelot " and " shore front " properties referred to in items " Sixth " and " Eighth." Aside from the items specifically bequeathed, her personal property was barely sufficient to pay

debts and funeral and administration expenses. The mortgages, " aggregating $15,000," referred to in item " Seventh " had been disposed of by testatrix during her life, and it seems to be admitted by all parties that a part of the proceeds was employed by the testatrix in the purchase of some property at Floral Park, Long Island, for the benefit of her son Frank and his children, the beneficiaries under this item " Seventh."

Adverting to the provisions of item " Ninth," the validity of the directions for accumulation of income for the payment of the mortgage indebtedness on the Twenty-eighth street property cannot be seriously maintained. (Real Prop. Law, § 61, as amd. by Laws of 1915, chap. 670; *Hascall* v. *King*, 162 N. Y. 134.)

The facts in the instant testamentary direction are indistinguishable from those presented in the *Hascall* case, in which the Court of Appeals, after quoting the Century Dictionary definition of the word " accumulation," says (at p. 142): " It is precisely that which is attempted in this case, namely, a withholding of a portion of the income from present beneficial enjoyment, to the end that the estate may be augmented in value, and thus, at the termination of the trust, pass to those whom the testator would have enter into the enjoyment of it at that time. Had the testator intended otherwise, he could readily have provided for satisfying the incumbrances by a sale of one or more of the parcels of real estate that he owned in the city of New York. It was all marketable real estate, but he chose not to sell it, and instead attempted to build a trust on a plan in violation of the letter and the spirit of the statute which prohibits the swelling of an estate by the accumulation of income, except for the benefit of minors and during their minority."

To like effect are *Appell* v. *Appell* (177 App. Div. 570; affd., 221 N. Y. 602); *Guaranty Trust Co.* v. *Halsted* (245 id. 447, 462), and many other cases which might be cited.

Having determined that this provision for accumulation is invalid within the provisions of section 61 of the Real Property Law, the next question for decision is whether such direction is severable from the balance of item " Ninth " so as to permit the remaining directions to stand or whether the entire scheme is so closely knit together that the illegality of this part voids the entire residuary clause. It is on this aspect of the case that the parties to this proceeding take violent issue, the testatrix's son Frank contending that the entire paragraph is voided and all the other parties arguing that merely the provision for accumulation should be eliminated. Both sides cite an impressive array of authoritative decisions which they maintain are decisive of

their contentions. These decisions are all, no doubt, excellent law as applied to the particular situations and testamentary wordings presented by their respective cases; but it is fundamental that beyond establishing general principles with which every one is familiar, decisions on matters of construction are of little aid in reaching a determination in a case presenting a different situation and a variant wording.

As was said by the Court of Appeals in *Matter of Durand* (250 N. Y. 45, at p. 53): " The citation of authorities is of very little use in cases of this kind upon the fundamental principles of the law of wills. All the authorities cited are mere repetition of these rules. The difference in the opinions is in their application to varying facts. * * * In some instances it has been possible to disregard that portion of the will which rendered the trusts illegal, and preserve the rest. * * * These cases express no new rule, but merely apply long-standing and well-recognized rules to new facts. The dominant, underlying principle in all these cases is to carry out as far as possible within the meaning of the statute the intention of the testator. If we can read into a will an intention to preserve any part of it, even with the illegal portions stricken out, the court will do so. In such a case we try to determine whether the maker of the will would have created the trust if all his express purposes could not be accomplished. This is not strictly law; it is a matter of good judgment, the judgment of men who according to our judicial system must in the last analysis determine the question. In declaring a testator's intention, however, the courts are limited to the words which the testator, himself, has used in his will."

The Court of Appeals further said in *Matter of Gallien* (247 N. Y. 195, at p. 200): " One of the best known of those principles [of testamentary construction] is that, if two or more constructions are reasonably possible, the one that will sustain the validity of the will is to be preferred, generally speaking, to the one that will defeat it."

If we add to the foregoing the fundamental rule that the testamentary intent of the testator is to be gathered from the will as an entirety and that the construction to be placed upon one clause will frequently be clarified by the disposition effected in another (*Livingston* v. *Ward*, 247 N. Y. 97), we have all the basic principles necessary for the determination of the problem here propounded.

A careful reading of the entire will indicates that the testatrix had several fundamental purposes in mind which, substantially in the order in which they were enumerated in the will, were as follows:

1. She wished her daughter Gladys to have the use for life of the " Homelot " property (item " Sixth ") free from taxes, which are to be paid from the residue (item " Ninth ").

2. She wished her son Frank to have the income for life from the Twenty-eighth street property and from $15,000 of bonds owned by her, *but only to the extent of the sum deemed necessary by the trustees for his support and maintenance*, any balance to be applied for the support of his children (item " Seventh "), and she wished the incumbrances on such items to be paid from the residue (item " Ninth ").

3. She wished her " shore front " property to be sold and the proceeds divided into three parts, one of which was to be held in trust for each of her children for life.

4. She wished her residue to be held in trust and the income accumulated.

5. She wished the following payments to be made from such residue:

(a) The incumbrances on the Twenty-eighth street property to be paid off.

(b) The incumbrances on the $15,000 mortgages to be paid off.

(c) The taxes and mortgage interest on the " shore front " property to be paid.

(d) The taxes upon the " Homelot " property to be paid.

(e) The income from one-half of the balance to be paid to John for life.

(f) The income from the other half of the balance to be paid to Gladys for life.

6. She wished her grandchildren to share equally in the remainders except for the small annuity to John's adopted son.

By her acts during her life, testatrix eliminated from this enumeration the $15,000 mortgages, selling them and using the proceeds of a part for the benefit of her son Frank, to whose benefit to the extent of the sum deemed necessary by the trustees for his support and maintenance the income derived from them was dedicated under the will.

The memoranda submitted on behalf of some of the parties contain statements and references which have no legitimate place in a proceeding of this nature. Many are violently disputed and even if verified could have no possible bearing upon the determination of the paramount intention of the testatrix which, on fundamental principles of construction, must be gathered only from the words used by her in the will.

One evidence of such intention is most striking, namely, the use in item " Seventh," in connection with the payment of income

to Frank, of the wording: " It is my intention under this paragraph of my will, to provide for the support and maintenance of my said son Frank, and in accordance therewith, I leave it to the discretion of my Executors and Trustees to pay over only so much of the income derived from the property bequeathed and devised under this paragraph of my will as shall be necessary, in their estimation, for his support. The balance remaining of the income over and above the amount necessary for the support of my said son, shall be used during the lifetime of my said son Frank for the support, maintenance and education of the children of my said son Frank."

If any one of the foregoing enumeration of wishes of the testatrix can be said to be a dominant purpose, within the common use of the phrase, it would appear to be the one thus demonstrated, to the effect that her son Frank, to the extent of this trust, is to receive support, but that he is to receive nothing more than that. In view of this provision of the will and the purpose of testatrix evidenced thereby, the question of whether he did or did not receive less or more than his brother or sister is irrelevant and immaterial in the extreme.

If the court is correct in its construction to the effect that the paramount purpose of the testatrix was to provide support and maintenance for Frank but to see to it that he received nothing more, it is obvious that a determination as contended for by him that all the provisions of item " Ninth " are rendered bad by the illegal accumulation would be to defeat the main desire of the testatrix, since it would result in an intestacy as to the residue and thus entitle him not only to receive one-third of the residue outright but also leave the Twenty-eighth street property which was dedicated to his support, seriously incumbered and in jeopardy through possible future foreclosure proceedings. Such a result should be avoided, if possible.

It seems reasonably apparent from the considerations hereinbefore noted that the primary object of the testatrix in the disposal of the residue of her estate was to continue and make more effective the provision for Frank's support contained in item " Seventh." Whereas she would have preferred to have this result produced through the application of income, yet there can be no serious question, as a result of the previous provisions of the will and from the order of the directions for payments from the residue, that she desired that the payment be made from principal if necessary. Even had the accumulation been a valid provision, it is conceivable that the mortgage maturities might have fallen in a manner which would have compelled their payment, at least in part, from principal,

a power for which under the phraseology used in the entire will, would have been implied by the court. Since the provision for accumulation has failed, it must result that the payment of the mortgages on the Twenty-eighth street property become a primary charge on the principal of the residue. Such a result has been achieved under somewhat similar states of fact and the principle here applied has been upheld in a number of adjudications in the past. (See *Wells* v. *Wells*, 30 Abb. N. C. 225, 233; *Williams* v. *Williams*, 8 N. Y. 525, 538; *Rapalye* v. *Rapalye*, 27 Barb. 610, 620; *Maynard* v. *Maynard*, 108 Misc. 362, 367; *Searles* v. *Brace*, 19 Abb. N. C. 10; *Cumberland* v. *Codrington*, 3 Johns. Ch. 229, 272.) The facts in the *Wells Case* (*supra*) are strikingly similar to those in the instant case and the opinion by Judge McADAM is logical and convincing of the legal soundness of the result attained.

The result reached in the instant case might be attained by other means, namely, by a transposition of the clauses in the second paragraph of item " Ninth," making it read: " * * * *in trust* for the following purposes, that is to say: To pay off any moneys I may owe upon mortgages upon the property held by me at No. 1070 East 28th Street, Borough of Brooklyn, City of New York, herein devised in trust for the benefit of my son Frank de Raismes Storey; thereafter to pay off any indebtedness I may owe upon two certain bonds and mortgages aggregating $15,000 hereinbefore devised in trust for the benefit of my son Frank de Raismes Storey; to collect and receive the rents, issues and profits, and after deducting therefrom the necessary costs and expenses of the maintenance and management of my trust estate properly chargeable upon the said income, to pay the taxes and interest on mortgages on the shore front property at Amagansett," etc.

Were such change in the order of the phrases to be adopted, the entire item in question would be valid, and there is abundant authority that the court has power so to do where, as in the instant case, the testator's intention is clear. (*Matter of Gallien*, 247 N. Y. 195, 200.) It is believed, however, that the former basis of decision is, in the instant case, more sound.

It will be obvious from the views hereinbefore expressed that the items of the will numbered " Sixth," " Seventh " and " Eighth " are, in the opinion of the court, valid as drawn.

The final question presented relates to the effect of item " Twelfth," which provides for the lapse of the interest of any beneficiary who shall " bring suit to nullify, change or attack this will, or in any way interfere with the foregoing provisions, or join with any party in any attempt to do any of the foregoing * * *."

It is entirely obvious that the actions of John and Gladys as

well as the special guardian on behalf of the infants could not on any reasonable construction be deemed to come within the intent or wording of this clause. This is less obvious in the case of Frank, who has indulged in a violent, almost acrimonious, attack on the validity of item " Ninth " of the will without the effort evinced by the others to attempt to save so much thereof as is possibly capable of salvation. Were it not for the reluctance which courts feel in enforcing provisions of a general penal nature, and the fact that, so far as the matter has presently progressed, all that is on the record is that Frank has answered the proceeding initiated by the executor, it might well be that the court would be inclined to hold that he had violated the substantial condition precedent to a share in the estate. As it now stands, the court holds that none of the parties have brought themselves within the phraseology of this item of the will.

Proceed accordingly.