In the Matter of the Estate of WILLIAM A. LEONARD, Deceased:

Surrogate's Court, Kings County, March 21, 1932.

*Squire, Sanders & Dempsey*, for the Guardian Trust Company and Florence S. Sullivan, executors of the estate of William A. Leonard, deceased.

*William L. Carns*, for William B. Leonard and Esther H. L. Winter.

*Hays, St. John, Abramson & Schulman* [*Arthur Garfield Hays* of counsel], for Mabel Dumbell.

*Cooper & Cooper* [*Morris Cooper, Jr.*, of counsel], for executors and trustees under the last will and testament of Louisa B. Van Nostrand, deceased.

*Taylor More*, for executor Charles S. Towle.

*Duncan A. Fraser*, special guardian for infants.

*Sullivan & Cromwell*, for the petitioner.

WINGATE, S. The chief difficulty in the case at bar, as indicated in the 163 pages of the printed and typewritten briefs of counsel for the several litigants, seems to arise from two sources. The first is a failure fully to appreciate the basic truth, which has been noted in innumerable decisions of all courts that " * * * little light is cast on the correct interpretation of the language in one will by decisions construing another " (*Matter of Rossiter*, 134 Misc. 837, 839; affd., 229 App. Div. 730; affd., 254 N. Y. 583) and that " * * * there is probably no branch of the law upon which precedents are of less value than in questions involving testamentary construction * * *, since ' * * * slight variations of phrase * * * or differences in arrangement may lead us to opposite results.' (*Matter of Bump*, 234 N. Y. 60, 63.) " (*Matter of Weissmann*, 137 Misc. 113, 114; unanimously affirmed on the opinion of this court, 232 App. Div. 698; leave to appeal to Court of Appeals denied by Appellate Division, 232 App. Div. 773, and by Court of Appeals, N. Y. L. J. April 1, 1931, p. 10.) (See, also, *Matter of Storey*, 134 Misc. 791, 796; *Matter of Quinby*, Id. 296, 301; *Matter of Grefe*, 140 id. 134, 137; *Matter of McCafferty*, 142 id. 371, 373.)

The second is a failure to comprehend the fundamental characteristics of vested and contingent estates.

At the hazard of tautology the court ventures to repeat certain of its observations on this subject as stated in *Matter of Terwilligar* (135 Misc. 170, 183; unanimously affirmed on the opinion of this court, 230 App. Div. 763; leave to appeal to the Court of Appeals denied by Appellate Division, 230 App. Div. 846, and by Court of Appeals, N. Y. L. J. Nov. 26, 1930, p. 1050): " This stumbling block, it is believed, arises in large measure as a result of the definition of vested and contingent estates contained in section 40 of the Real Property Law. This section reads as follows: 'A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain.'

" It might be an interesting study for the curious to attempt a compilation of the number of pages of learned opinions of the courts of this State which have attempted to explain the meaning of this

enactment. In spite of this outpouring of legal learning, the application in a vast number of cases which are constantly arising, remains abstruse. Take the case of a trust to 'A' for life with the remainder payable on his death to 'B,' if living at such time and if not then living, to 'C.' Under the definition of a vested estate contained in the section, the remainder is vested in 'B,' since he is 'a person in being who would have an immediate right to the possession of the property, on the determination' of the life estate to 'A.' It is equally obvious that 'B' may die before 'A,' in which event he will never receive any share in the estate. In other words, his receiving any share in the estate is expressly contingent on the then undeterminable question of his survivorship of 'A.' It might, therefore, well be argued, that in such a case, which arises with great frequency, the remainder also falls within the statutory definition of a contingent estate for the reason ' that the person to whom * * * it is limited * * * remains uncertain' until the termination of the preceding estate. Whatever merit might have existed in the general class of cases in a contention that under such circumstances the remainder should be classed as contingent, has long since become academic by reason of repeated determinations by courts whose decisions are binding here. [*Moore* v. *Littel*, 41 N. Y. 66, 76, 77, 79, 80; *Matter of Steinwender*, 176 App. Div. 517, 519; affd., 221 N. Y. 611; *Matter of U. S. Trust Co.*, 179 App. Div. 923; affd., 223 N. Y. 617; *Stringer* v. *Young*, 191 id. 157; *Matter of Haggerty*, 128 App. Div. 479, 480, 481; affd., 194 N. Y. 550.]

"As a result of these and many other adjudications, it is firmly established that as to all general questions affecting estates, the law recognizes three varieties of remainders, which may be differentiated as follows: *First*, absolutely vested remainders, in which the taking by a specified individual is directed without any proviso or limitation whatsoever, *e. g.*, to 'A' for life with remainder to 'B;' *second*, contingently vested remainders or remainders ' vested subject to being divested,' in which the remainder is given to one person with a proviso that under certain contingencies it shall go to another, *e. g.*, to 'A' for life with remainder to 'B' if 'B' be living at 'A's' death, otherwise to 'C;' or to 'A' for life with remainder to 'B' if 'C' dies without issue, otherwise to the issue of 'C;' and, *third*, contingent remainders, where the gift is to persons who at some future time may answer a certain general description, *e. g.*, to 'A' for life, remainder to the issue of 'B,' who is childless."

In the final essence, an estate " vested subject to being divested " or, to use the perhaps preferable nomenclature, " contingently

vested," is really an estate subject to a condition subsequent. It is for all purposes the absolute property of the person in whom it is vested unless and until the specified contingency occurs, which takes ownership from one person and places it in another. This was so fully considered and the applicable authorities so completely reviewed by this court in its recent opinion in *Matter of Smallman* (141 Misc. 796, see pp. 800–803) that further development of the point would seem superfluous.

It has been noted in innumerable adjudications that the law favors a construction which determines estates to be vested rather than one which holds them to be contingent. (See *Matter of Rossiter, supra,* at p. 840 and cases cited.) This has, on occasion, been termed a canon construction, but it is, in reality, more truly a policy of the law tending to certainty of ownership. In any event, it is a most cogent consideration to be borne in mind in the decision of any pertinent question of testamentary construction.

With these preliminary thoughts in mind, the relevant facts of the instant case will now be considered.

The will which is the subject of the present application for construction was executed by the testator over date of April 16, 1889. Whereas its provisions are somewhat complex, it presents striking internal evidence of having been prepared by an expert draftsman. Its authorship has not been disclosed but it is perhaps a pertinent fact that its first subscribing witness is George H. Sullivan, and that the sole executor and trustee named, other than members of the testator's immediate family, is the present accountant, George Nelson Cromwell, Esq.

The testator died on July 1, 1893, and the document was admitted to probate on the thirteenth of the following September. The accounts of the executors were judicially settled on December 17, 1895, and the administration of the several trusts therein erected was undertaken by the trustees.

The document, after the usual direction respecting payment of debts, etc., made specific devises and bequests of the family residence and contents, and thereupon erected four trusts, the first for his wife, and the remaining three for his three children, William, Louisa and Lewis.

The provisions for the children are contained in the fourth item, which directed the division of the remainder of the estate into three equal parts or shares, one of which was dedicated to each of the children of the testator. These directions are found in three numbered subparagraphs. That numbered " I " provided the benefits for the son William, directing that one-third of his one-third share of the residue should be paid to him outright, if

living at the testator's decease. The remaining two-thirds was given to trustees to pay the income to him for life " and upon his death, if he survive me, or upon my decease, if I survive him, it is my Will that the principal thereof go to his child or children, if any he have, share and share alike, issue of any deceased child to take the share the parent would have been entitled to if living, and I give, devise and bequeath the same accordingly." It then provided that in the event he should leave no child or issue, or should predecease the testator, the trustees should hold this corpus for his wife, Sarah, for life, the direction continuing, " * * * then upon his death, he surviving me, I do give, devise and bequeath the principal thereof, unto my children, share and share alike, the issue of any deceased child to take the share the parent would have been entitled to, if living."

In the second numbered subparagraph, provision was made for the testator's son Lewis, likewise directing a payment over to him absolutely of one-third of his portion unless he predeceased testator, in which event it was given to his child or children. The remaining two-thirds of Lewis' share was directed to be erected into a trust with income payable to him for life, this provision continuing " * * * and upon his death, if he survive me, or upon my decease, if I survive him, to pay and divide the principal thereof to and among his children, share and share alike, the issue of any deceased child to take the share the parent would have been entitled to, if living; but if my said son survive me, and die without leaving such child or issue of deceased child him surviving, then such share shall go to my other children, share and share alike, the issue of any deceased child taking the share the parent would have been entitled to, if living."

The one-third of the residue dedicated to the testator's daughter Louisa, was also directed to be divided into parts and one-third paid her outright, the remaining two-thirds to be erected into a trust with income payable to her for life, the direction continuing: " * * * and upon her death if she survive me, or upon my decease if I survive her, to pay and divide the principal thereof to and among her children, share and share alike, the issue of any deceased child to take the share it would have been entitled to, if living; but if my said daughter survive me, and die without leaving such child or issue of deceased child her surviving, then such share shall go to my children, share and share alike, the issue of any deceased child taking the share the parent would have been entitled to, if living."

Testator's widow was the first to die and her portion of the

estate has been duly distributed and is not here in question. Lewis H. Leonard, one of the sons, died on December 6, 1917, leaving four children, William B., Jr., Mabel, Esther and Josephine. His will was probated on January 9, 1918, in Tioga county, N. Y. Louisa died on February 22, 1930, leaving no husband or children. Her will was probated on March 11, 1930, in New York county. At her death her brother William and the four hereinbefore noted children of Lewis were living, but shortly after her death one of these children, Josephine, died on April 27, 1930, her will being admitted to probate on May 20, 1930, in Westchester county.

Testator's remaining child, William, died on September 21, 1930, leaving no wife or children. His will was admitted to probate in Cuyahoga county, Ohio. No ancillary administration has ever been taken out in this State.

The questions raised concern the identity of the persons or estates entitled to participate in the distribution of the remainders of the trusts for the three children, William, Louisa and Lewis.

Approaching first the disposition of the remainder of the trust for Lewis, as that capable of most obvious solution, it is to be noted that the direction in this respect was identical with that provided in regard to those of testator's other children who might die leaving issue, and so far as presently pertinent, read: " Upon his death * * * to pay and divide the principal thereof to and among his children, share and share alike * * *."

The words " pay and divide " are recognized words of art, which, when properly employed, imply futurity in connection with the subject-matter of the gift and thus prevent its vesting prior to the time fixed for distribution by the testamentary direction. (*Matter of Crane*, 164 N. Y. 71, 76.) The basis for this rule is obvious. In the usual case the corpus is directed to be held and its income paid to a named individual with the provision that upon the happening of some specified event, the principal be divided and paid over to others. Futurity is almost inevitably connoted by such a direction, since division is inately incompatible with the primary duty of the fiduciary to hold the principal *in sclido* and pay its income to the prior beneficiary. It would be a labor of supererogation to cite the multitude of cases which have recognized and applied this principle of construction, whose extent and limits are well demonstrated by the language of the court in *Fulton Trust Co.* v. *Phillips* (218 N. Y. 573, 583): " The ' divide and pay over rule ' like all other rules which courts utilize to aid in the interpretation of wills is available to facilitate them in ascertaining the real intention of the testator. In searching for the intention of the testator, where there is nothing in the will which bespeaks a con-

trary purpose, the ' divide and pay over rule ' may furnish valuable aid. Notwithstanding the criticism to which the rule has been subjected [*Dickerson* v. *Sheehy*, 156 App. Div. 101; affd., 209 N. Y. 592], we recognize the force of the rule and have not hesitated to give it effect when to do so aids in the discovery of the intention of the testator."

Since by the terms of the present will the children of Lewis were direct remaindermen of this trust, it is obvious that the action of the trustee in distributing the corpus to them in equal shares was correct.

The determination of the proper distribution of the trust fund erected for the life of Louisa, the next to die, whereas not so entirely obvious as in the case of that of Lewis, is nevertheless clear on the language of the will, when coupled with pertinent principles of construction. Testator's direction in this regard reads: " * * * If my said daughter * * * die without leaving * * * child or issue of deceased child her surviving, then such share shall go to my children, share and share alike, the issue of any deceased child taking the share the parent would have been entitled to, if living."

As noted, at the time this trust fell in, testator's son William was living, and his son Lewis had died, leaving issue, of whom all four were living. It is obvious, and there is no contention to the contrary here made, that William and Lewis' four children jointly were entitled to moieties of the remainder. The sole question in this connection is whether they were entitled to take it all, or whether the estate of Louisa should also receive a one-third share thereof. This turns on whether or not the direction " then such share shall go to my children " constituted a contingently vested estate in a one-third part of the remainder of this trust in each child living at the death of the testator.

The cogency of the general rule in favor of vesting of estates has already been noted, and additional citations *ad infinitum* and *ad nauseum* might be supplied. Their total result, however, is summed up in the language of Judge MARTIN, writing for the unanimous court in *Hersee* v. *Simpson* (154 N. Y. 496, 500): " The rule is well settled in this state that a remainder is not to be considered as contingent in any case where, consistently with the intention of the testator, it may be construed as being vested."

Otherwise phrased, this means that an estate will be considered as vested unless some different affirmative intent is discernible in the testamentary disposition effected.

The question presented, therefore, is whether the directions of

the instant will as a whole are such as to demonstrate that such an interpretation is inconsistent with the testamentary desire.

The strikingly superior draftsmanship of the document has already been noted and this circumstance has a distinct bearing on the decision of the question. The legal principle applicable in this regard cannot be better stated than is done by Surrogate GRANT in *Matter of Barrett* (141 Misc. 637, 638): " In examining that language we must take into consideration the fact that it was drawn by an experienced lawyer and must give to the words used their usual and accepted meanings without enlargement and without restriction (*Overheiser* v. *Lackey*, 207 N. Y. 229, 233; *Adams* v. *Massey*, 184 id. 62, 70), and when particular or technical terms are used particular or technical interpretation or construction follows as of course in the absence of all clear intent to the contrary. (*Matter of Catlin*, 97 Misc. 223, 227.) We must also keep in mind that no words used by the testator should be cast aside as meaningless, but that effect must be given if possible to every word and provision. (*Roseboom* v. *Roseboom*, 81 N. Y. 356; *Matter of Briggs*, 180 App. Div. 752; *Matter of Hemstreet*, 101 Misc. 340; *Kent* v. *Fisk*, 151 App. Div. 279.)"

An additional determination peculiarly apposite on the facts of this case will be found in *Matter of Myers* (98 Misc. 108, 114, 115).

It has already been noted that in the wording of the direction for the division and payment over of the remainders of all of the trusts to possible children of the particular life tenants of these trusts, the draftsman employed the technical phraseology most legally appropriate for the purpose of effecting a contingent gift to a class, and it will prove helpful to compare this language with the directions made in the several trusts respecting distribution of the remainders, in case the respective life tenants died without issue.

In the case of William's trust the clause read: " * * * then upon his death, * * * I do give, devise and bequeath the principal thereof, unto my children, share and share alike, the issue of any deceased child to take the share the parent would have been entitled to, if living."

In the trust for Lewis the wording was: " * * * if my said son * * * die without leaving such child or issue of deceased child him surviving, then such share shall go to my other children, share and share alike, the issue of any deceased child taking the share the parent would have been entitled to, if living."

The provision respecting Louisa's trust directed: " * * * if my said daughter * * * die without leaving such child or issue of deceased child her surviving, then such share shall go

to my children, share and share alike, the issue of any deceased child taking the share the parent would have been entitled to, if living."

All three of these directions are in striking contrast to the directions to pay and divide, previously considered. So far as concerns the question of a vesting of the remainder shares of the trusts in testator's three children, the language employed in respect to the trusts for Lewis and Louisa is identical except that in the former it is specified that "such share shall go to my *other* children" (italics not in original), while in the latter it is provided that "such share shall go to my children." The disposition in William's trust is couched in different phraseology: " * * * then upon his death * * * I do give, devise and bequeath the principal thereof unto my children."

Since the adverb "then," when used in such a connection, has invariably been construed as referring to the particular contingency upon which the estate was limited, and not to the time at which it was to come into being (*Hennessy* v. *Patterson*, 85 N. Y. 91, 101; *Matter of Woodruff*, 135 Misc. 203, 206; *Ackerman* v. *Ackerman*, 63 App. Div. 370, 372; *Trowbridge* v. *Coss*, 126 id. 679, 683; *Hersee* v. *Simpson*, 154 N. Y. 496, 500; *Connelly* v. *O'Brien*, 166 id. 406, 408; *Staples* v. *Mead*, 152 App. Div. 745, 749; *Matter of Fordham*, 235 N. Y. 384, 387, 388; *Matter of O'Dell*, 124 Misc. 76, 78), it follows that under this language there is a direct and present gift of the subject-matter of the particular benefaction, namely, the remainder of this trust. Such gift, however, not being of a specific object, speaks as of the time of the death of the testator (*Matter of Thompson*, 217 N. Y. 111, 115; *Matter of Harden*, 177 App. Div. 831, 840; affd., 221 N. Y. 643; *Matter of Sargent*, 215 App. Div. 639, 641; *Matter of Grace*, 232 id. 76, 79; *Gridley* v. *Gates*, 228 id. 579, 583; *Simpson* v. *Trust Co. of Am.*, 59 Misc. 96, 99; affd., 129 App. Div. 200, 202; affd., 197 N. Y. 586) and effects a present gift of the subject-matter, the enjoyment of which is postponed until the termination of the intermediate estates and is made conditional upon the death of the particular life tenant without issue.

Clarity of conception in this regard will be promoted if the subject-matter of testator's potential gift in this connection be borne in mind. The fund subject to the disposition constituted two-ninths of the residue of his estate. The possibilities for its donation included an outright legacy of the entirety or a gift in trust with enjoyment of the use for not exceeding two lives in being at his death, followed by an outright donation of the principal. He adopted the latter alternative and gave the primary life use to

William, a secondary life use to his wife, Sarah, on the condition subsequent that she should survive William, and the ultimate beneficial possession, also subject to a condition subsequent that William should die childless, to his own children. Nothing could be less ambiguous than the language employed in this last gift. It is a present act, speaking as of the date of death: " I do give, devise and bequeath the principal thereof unto my children." What children? Obviously those in existence at the time the gift took effect. Had the subject-matter of this benefaction been a specified object or fund, as, for example, a reversion of real property, presently subject to a term for years, any question respecting the recipients of the bounty would have bordered on the ridiculous, and the situation actually presented is, in essence, identical. Here the testator created the intervening estate by will. In the supposed case of the realty reversion, he might have created it during life. In both, present enjoyment would be withheld and future possession alone would be capable of donation. It is obvious, therefore, that the remainder of William's trust was, from the moment of the probate of the will, vested in the children of testator who survived him, subject only to the divesting condition subsequent, that William should die leaving issue.

The directions in this regard fall clearly within the first exception noted in *Matter of Crane* (164 N. Y. 71, 76) to the rule which suspends vesting where futurity is annexed to the substance of the gift. This exception is that " If the postponement of the payment is for the purpose of letting in an intermediate estate, then the interest shall be deemed vested at the death of the testator and the class of legatees is to be determined as of that date, for futurity is not annexed to the substance of the gift."

Absent a clear countervailing expression of intention by the testator, this principle has been uniformly applied. (*Matter of Young*, 145 N. Y. 535, 539, 540; *Matter of Lamb*, 182 App. Div. 180; affd., 224 N. Y. 577; *Runyon v. Grubb*, 119 App. Div. 17, 19; *Matter of Russell*, 168 N. Y. 169, 176; *Matter of Brown*, 154 id. 313, 327, 328; *Bergmann v. Lord*, 194 id. 70, 74; *Matter of Bostwick*, 203 App. Div. 158, 159; *Foote v. Peaslee*, 206 id. 329, 332; *Matter of O'Dell*, 124 Misc. 76, 78.)

Although it is obvious that the remainder of William's trust was thus contingently vested in the testator's other children, it does not necessarily follow that the same result follows from the applicable donative language used in connection with the trusts for his other two children, since the phraseology in respect to them differs. The words employed in the similar directions in the trusts for Lewis and Louisa are substantially identical *inter sese*, being that upon

the happening of the specified contingency " such share shall go to my children," and the word " other " being inserted in Lewis' direction.

It may readily be admitted that a construction of contingent vesting is, under this phraseology, not so entirely obvious as is the direct present bequest in William's trust. Nevertheless, the same considerations discussed in respect thereto also apply in this connection, and there is here the same presumption of vesting. This presumption is strengthened by an analysis of the testamentary purpose disclosed by the general plan of the will. None but the members of testator's immediate family received benefits. The housing of the widow and the provision of a sum sufficient for her support were first directed, but except for these, the entire estate was dedicated to testator's three children, under substantially identical directions. Each was to receive one-third of his share outright, each was assured of support for life by a trust of the balance. The remainder of each such trust was first limited to the children of the particular life tenant, if any, and in default of such issue, was beneficially dedicated to testator's own children. The remainder of William's trust was plainly given as a contingently vested estate to testator's children. The inference is, therefore, substantially inescapable that since the language of the gifts of the remainders of the two other trusts is *capable* of such a construction, it was testator's intention to bestow like benefits in respect to them. This demonstration is really unnecessary to the result, which, on the presumption in favor of vesting, would be substantially obligatory without it, since under the *Hersee Case* (*supra*) the burden is on those contesting the construction of vesting to demonstrate its impropriety.

It must, therefore, be decided that immediately upon the death of the testator and the probate of the will, the remainders of all three of these trusts were contingently vested in testator's three children then living, subject only to the divesting condition subsequent of the birth of children to the particular life tenants. The divesting condition subsequent never occurred in respect to any of the trusts except that for Lewis, since neither of the others ever had any children.

The final question presented on this branch of the case is whether the estates of William and Louisa are entitled to participate in the remainders of the trusts established for them, respectively.

The express language of the will would seem to be determinative of the point.

The gifts were respectively to " my children " in both of these provisions. As the will spoke from the date of death, the natural

conclusion would be that all those who answered to this description at that time took the gift which was then presently made, and such is the general tenor of authority. (*Matter of Bump*, 234 N. Y. 60; *Doane* v. *Mercantile Trust Co.*, 160 id. 494, 499, 500; *Campbell* v. *Rawdon*, 18 id. 412, 417; *Wadsworth* v. *Murray*, 161 id. 274, 283, 284; *Matter of Tienken*, 131 id. 391, 406; *U. S. Trust Co.* v. *Taylor*, 193 App. Div. 153, 156; affd., 232 N. Y. 609; *Simonson* v. *Waller*, 9 App. Div. 503, 515; *Connolly* v. *Connolly*, 122 id. 492, 495; *Matter of Burdsall*, 128 Misc. 582, 585; affd., 221 App. Div. 756; *Matter of Foster*, 133 Misc. 222, 224; affd., 227 App. Div. 668; *Tredwell* v. *Tredwell*, 86 Misc. 104, 108; *Matter of Thomas*, 128 id. 260; *Matter of Roth*, 234 App. Div. 474.) Since the life tenants of the respective trusts were equally children of the testator with the others, and, therefore, within the description of the remainder gifts of the funds from which they were entitled to receive the life income, there is no sound basis for a determination of testamentary intent to exclude them. That there is nothing incongruous in principle in such a construction is apparent on theory from the fact that a gift of one part of a total thing, namely, the benefit of use for a period, cannot on any logical basis be considered as negativing a gift of the entirely distinct thing of a portion of the principal of the fund after the termination of the period of its use. In this respect authority agrees with logical theory, as may be determined from an examination of the cases last cited.

In the instant will, however, there is an entirely conclusive demonstration in the testamentary language itself, that the testator intended the estates of William and Louisa to participate, on the happening of the events which have occurred, in the distribution of the remainders of their respective trusts.

It is fundamental that testator's intention is to be ascertained from an examination of the will as an entirety (*Matter of Gargiulo*, 134 Misc. 182, 185; *Matter of Farkouh*, Id. 285, 286; *Matter of Kirkman*, Id. 527, 528; *Matter of Storey*, Id. 791, 799; *Matter of Gargiulo*, 138 id. 90, 98, and cases cited in these several opinions) and that the phraseology of one direction is especially pertinent in interpreting the like or divergent language of another similar provision. (*Matter of McGowan*, 134 Misc. 409, 410, 411; affd., 228 App. Div. 779; affd., 254 N. Y. 513; *Matter of Storey*, 134 Misc. 791, 796; *Matter of McCafferty*, 142 id. 371, 381.)

It is also primary that " words are never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant. Excision is a ' desperate remedy' * * *. It is ' only a last resort, to be availed of when all efforts to reconcile the inconsistency by construction have failed ' * * *."

(*Matter of Buechner*, 226 N. Y. 440, 443.) (See, also, *Sedlaczek* v. *de Dreuzy*, 220 App. Div. 446, 450; *Adams* v. *Massey*, 184 N. Y. 62, 69; *Van Nostrand* v. *Moore*, 52 id. 12, 20; *Matter of Roth*, 125 Misc. 351, 354; *Matter of Kirkman*, 134 id. 527, 528.)

The applicability of these principles to the present question lies in the fact that in the trusts of which William and Louisa were life tenants, the pertinent remainder gift in each case was to " my children," whereas the direction in that of Lewis was to " my *other* children." (Italics not in original.) The inclusion of " other " in the latter direction obviously excluded Lewis, the life tenant, from participation therein. The omission of this word in the gift of the other remainders, if it is to be given any effect, which is obviously necessary, can result only in an indication of a testamentary intent respecting the devolution of the remainders of the trusts for William and Louisa, different from that entertained in respect to the one in which Lewis was interested as primary beneficiary. There are only two possible constructions, namely, that as to any one of the funds all the children, without exception, were to participate in the remainder distribution, or that all except the life tenant were so entitled. In Lewis' case the latter construction was expressly enjoined by the inclusion of the additional word. Its omission in respect to the others makes it equally obvious that in respect to them the testator entertained the diverse desire. What his reasons for such intent were is an utterly idle and unprofitable speculation (*Matter of Shumway*, 138 Misc. 429) in which the court is not inclined to join these counsel who have indulged in it.

Two further questions arise in connection with the distribution of the shares in the remainders of the funds in which William and Louisa were life tenants. These concern the manner of distribution of the portions passing to the " issue " of Lewis. The will, as noted, was drawn in 1889 and the testator died in 1893. The case of *Soper* v. *Brown* (136 N. Y. 244) was decided on December 13, 1892. Its doctrine, which was declaratory of the law previously existing, and which continued until abolished by statute, effective April 30, 1921, was that the primary signification of the word " issue " was descendant, in whatever degree. The gifts of the remainders of the trusts for William and Louisa, as noted, provided that they should go to testator's children, with the addition: " the issue of any deceased child to take the share the parent would have been entitled to, if living." William B. Leonard, one of Lewis' children, has three children and one grandchild; Mabel R. Dumbell, another, has two children, and Esther H. L. Winter, a third, has one child, three grandchildren and two great-grandchildren, so far as the court can determine from the record. Within

the rule of *Soper* v. *Brown*, all of these would be entitled to share equally in the distribution with the children of Lewis, and the question is whether such rule is applicable. The cogency of the rule was considered, and the pertinent authorities noted, in the opinion of this court in *Matter of Mann* (138 Misc. 42, 47 *et seq.*). (See, also, *Matter of Leverich*, 135 id. 774, 777; affd., on the opinion of this court, 234 App. Div. 625; leave to appeal to Court of Appeals denied, Id. 696.) As therein noted, the rule yields to " a very faint glimpse of a different intention." (*Matter of Farmers' Loan & Trust Co.*, 213 N. Y. 168, 174; *New York Life Ins. & Trust Co.* v. *Winthrop*, 237 id. 93, 105.) The question of the present applicability of the rule, therefore, resolves itself into one of whether the phraseology of the present will presents anything which may be seized upon as indicating a diverse testamentary desire. In the opinion of the court it clearly does. Whereas the substitutional gift is to " issue," such issue, collectively, is given " the share the *parent* would have been entitled to, if living." (Italics not in original.) The " parent " in this connection is one of testator's children. It has frequently been held that the word " child " in a will is, in the usual case, to be taken in its primary significance, and will not include a " grandchild." (*Matter of Harris*, 138 Misc. 287, 288.) By analogy, the term " parent " should be given its primary meaning, and should be held to exclude grandparent in the absence of cogent evidence in the will of its use in a different sense.

The final question relating to the manner of distribution among the children of Lewis is capable of ready solution on the principles hereinbefore discussed. As noted, Lewis, during his life, was the owner of a conditionally vested one-third interest in the remainders of the trusts erected for the lives of Louisa and William respectively. This was a conditional future estate (Real Prop. Law, § 37), which was descendible, devisable and alienable (Real Prop. Law, § 59), although subject to defeat on the happening of the conditions subsequent that the life tenants should leave issue. The situation was similar to that which would have been created had the testator bequeathed to Lewis two promissory notes each in a sum equalling two-twenty-sevenths of his residuary estate, payable, the one on the death of Louisa and the other on the death of William, with the further direction that in case Lewis should die before the notes were due, they should be payable to Lewis' children. The contingently vested remainder interests in the other two trusts which passed to Lewis on the testator's death were, in essence, choses in action in like measure with the supposed promissory notes, and on his death they passed to his four children,

William B., Mabel, Esther and Josephine, as tenants in common. The nature of the rights thus passing to these alternative donees under the directions of the will was not and could not be altered by the fact that by reason of the terms of the testamentary document the payee thereof was changed from Lewis to his children. On their father's death, therefore, each of these children received a vested interest in a quarter of one-third of the remainders of the trusts for William and Louisa, such estate, like their father's, being subject to the condition subsequent that William and Louisa, respectively, died childless. The divesting condition never occurred, wherefore, judged by the event, such estates in each of the four children in one-twelfth of the remainder of each of these trusts were absolute from the date of Lewis' death. All four of Lewis' children were alive when Louisa died and, therefore, were entitled to receive their respective shares in the remainder of her trust in possession at that time. One of the children, Josephine, predeceased William, but since her one-twelfth interest in the remainder of his trust was a vested estate in her from the time of her father's death, it passed to her estate, which is entitled to receive payment thereof.

The remainders of the two trusts will, therefore, be paid, one-third each to the estates of William and Louisa, and one-twelfth each to William B., Mabel, Esther and the estate of Josephine.

Proceed accordingly.