[No. 28477.   Department One.   October 20, 1942.]

SEATTLE-FIRST NATIONAL BANK, *Respondent,* v.
FRANCIS J. BROTT, *as Executor, Appellant,*
CHILDREN'S ORTHOPEDIC HOSPITAL *et al.,*
*Respondents,* JOHN A. DOE *et al.,*
*Defendants.*[1]

[1]Reported in 130 P. (2d) 363.

*Graham, Howe & Dunn,* for appellant.

*Green & Burnett,* for respondent Seattle-First National Bank.

DRIVER, J.—The facts in this case are not in dispute. George W. Trimble died testate December 10, 1929, leaving separate property of the value of approximately one million five hundred thousand dollars. His first wife and the children of his first marriage had predeceased him. His second wife, Martha E. Trimble, a widow, with one son by a former marriage, survived him. His last will, executed in November, 1928, had been drafted by an attorney described by the trial court as one of the leading members of the Seattle bar.

As the will is too long to be set out in full, only its material provisions will be summarized and quoted. It directed payment of the testator's debts and funeral expenses, and made a number of specific bequests, one to the testator's widow of fifty thousand dollars, and another to her son by the former marriage in the amount of ten thousand dollars. The widow was also given the testator's residence, automobile, household goods, jewelry, and the like.

In item nineteen of the will, the testator stated that it was his intention to dispose of his whole estate, and that he had taken care of every person for whom he intended to provide.

By item twenty-one, the residue of the estate was placed in trust, with certain designated trustees,

" . . . for the purpose of paying all the bequests hereinbefore referred to and for paying the annuity to my wife, Martha E. Trimble, hereinafter provided for, and for paying all estate and inheritance taxes on all my devises. and bequests to my said wife, including any upon her said annuity, and for making all payments therefrom and carrying out all directions with reference thereto hereinafter set forth. . . .

I desire that they [the trustees] handle said property so as to secure the greatest income therefrom without undue risk. They are hereby directed to pay from the net income thereof to my wife, Martha E. Trimble, so long as she may live, the sum of Thirty-two Thousand Dollars per annum, in quarter annual payments, if earned, if not the amount earned. In determining whether, from the first day of January following my death, the income sufficient for the full payment of such annuity is earned, and if not the amount of the deficiency, the period of the calendar year beginning with January first shall be taken, so that any deficiency in earnings of any quarter year may be made up from earnings in the same calendar year, but not otherwise. If after payment to my wife of said annuity of Thirty-two Thousand Dollars there remains a surplus of net income, I direct said trustees during the life of my said wife to pay out and hold such surplus as follows: [Here followed a direction that 65% be paid to seven named institutions, for charitable purposes, in shares ranging from 2½% to 25%, and that the remaining 35% be added to the corpus.]"

Item twenty-four set up a second trust, operative upon the death of the testator's widow, for the benefit of the same institutions named as beneficiaries in item twenty-one.

Item twenty-eight reads, in part:

"I direct that the annuity directed by Item 21 hereof to be paid to my wife, Martha E. Trimble, shall commence to run from the date of my demise, but that if any statutory allowance is made to her for her support, either by my executors or trustees or by any court, the amount of payments made upon such allowance shall be deducted from such annuity."

The net income of the trust created by item twenty-one of the will, for each of the years 1930 to 1938, inclusive, was in excess of thirty-two thousand dollars, and Mrs. Trimble, the widow, was paid quarter-annual payments of eight thousand dollars throughout that period. She died September 29, 1939. Up to that time,

the trust had earned, in the year 1939, in excess of thirty-two thousand dollars, and she had received two quarterly payments of eight thousand dollars each, one on March 30th and the other on June 29th.

The plaintiff, the sole surviving trustee, brought the present action under the declaratory judgment statute to obtain the court's construction of the trust provisions of the will, naming as defendants the executor of the estate of the testator's widow and the beneficiary in- . stitutions (hereinafter called the charities). From the trial court's decree construing the will, the widow's executor has prosecuted the present appeal. For convenience, we shall refer to plaintiff trustee as if it were the only respondent.

Appellant contends that the will made a gift of income to the widow; that the full thirty-two thousand dollars earned by the trust prior to her death, in the year 1939, vested in her; and that her executor is therefore entitled to receive that sum, less the sixteen thousand dollars paid her during her lifetime. Respondent maintains that it was the intention of the testator to grant the widow a specified sum, payable periodically from income, in the nature of an annuity, and gave her only the right to receive the quarter-annual payments contingent upon her survival to the maturity dates thereof. The trial court's construction of the will was in accord with respondent's theory, but the court held that, since the annuity provision had been made for the support of the widow, her estate was entitled to apportionment of the payment for the unexpired quarterly period in which she died, and decreed that her executor was entitled to the sum of $7,913.04 and interest.

The paramount consideration in this controversy must be the intention of the testator. As we said

in *Johnson v. McClure*, 5 Wn. (2d) 123, 127, 104 P. (2d) 962:

"The intention of the testator is a predominant factor to be determined. In other words, we must ascertain the objects sought to be accomplished by the maker of the will. In so doing we must gather the meaning from an examination of the writing as a whole viewed in the light of the surrounding circumstances concerning the testator, the estate of his property, the condition of his family, and the persons named as devisees [citing six prior decisions of this court]."

Applying the foregoing principles to the instant case, it seems clear, as the trial court pointed out in its memorandum opinion, that the testator had in mind two primary objectives, namely: first, to provide for the support of his wife during her lifetime; and, second, to set up a trust in perpetuity for the benefit of the charities designated as the objects of his bounty. He was meticulously careful to protect the corpus of the trust. Upon the death of the widow, it was to be dedicated intact to the production of income for the charities—in fact, it was to be augmented by paying into it 35% of the surplus income during the lifetime of the widow. The testator had made other generous provisions for his widow by giving her his residence, furniture, household goods, automobile, and fifty thousand dollars in cash. As stated, he bequeathed ten thousand dollars to her son by a former marriage. He declared in the will that he had taken care of everyone for whom he wished to provide. We think he intended that his wife, in addition to the other legacies, should have for her support thirty-two thousand dollars a year, payable quarterly, during her lifetime. We do not believe the testator intended that a substantial amount in excess of such support allowance from the trust income, should be paid to the

widow's estate after her death, a result which would follow should appellant's theory be adopted.

In furtherance of his first objective, the testator, in item twenty-one of the will, directed the trustee to "pay from the net income thereof to my wife, Martha E. Trimble, so long as she may live, the sum of Thirty-two Thousand Dollars per annum, in quarter annual payments, if earned, if not the amount earned." As appellant points out, there was no express provision for the payment of eight thousand dollars a quarter, it is true; and the quarterly amounts may have been less, had less been earned. But, considering the attendant circumstances and the situation of the insured, it was a practical certainty that the payments would never fall below eight thousand dollars a quarter.

As stated, the value of the estate was about one million five hundred thousand dollars. It was extremely unlikely that it would fail to earn thirty-two thousand dollars a year. That the testator thought it would earn more than that, is indicated by the elaborate provisions which he made for distribution of the surplus income, in varying percentages, to the seven charities named in the will. That his expectation in this regard was amply justified, is evidenced by the fact that, from 1930 to 1938, a period embracing the worst years of the depression, the trust earned more than the annual payments provided for the widow's support. The direction in the will that, if less than the "quarter annual" payment were earned, the widow should receive the amount earned, was, we think, intended as a precautionary measure for the protection of the corpus. It should be construed in connection with a succeeding provision that any deficiency in earnings of any quarter could be made up from earnings in the same calendar year, *but not otherwise*.

As we have pointed out, the will was drafted by a lawyer who was regarded as one of the leaders of the Seattle bar. It will be noted that, in the excerpts from the will which we have quoted, he used the word "annuity," in referring to the payments from income provided for the widow, six different times. The word "annuity" has been variously defined, and its common-law meaning, to a considerable extent, has been modified and extended by judicial definition; but there is, nonetheless, a well-recognized distinction between an annuity and a grant of income. 2 R. C. L. 4, § 5; 2 Am. Jur. 819, § 3; 3 C. J. S. 1374, § 1 b (1); 3 Words and Phrases (Perm. ed.), p. 489 *et seq.*

Reason, as well as authority, justifies the assumption that, when the lawyer, in drafting the will, employed the word "annuity," he did so advisedly, with due appreciation of its legal signification, and that he used it in its technical, legal sense. It cannot reasonably be assumed that he employed it to describe a grant of income. *Hay v. Dole,* 119 Me. 421, 111 Atl. 713; *In re Leonard's Estate,* 143 Misc. 172, 256 N. Y. Supp. 355; *In re Bourn's Estate,* 25 Cal. App. 590, 78 P. (2d) 193.

As a general rule, when an annuity is payable periodically during the life of the annuitant, he is entitled only to payments which have matured prior to his death. 3 C. J. S. 1383, § 6 a (1); 2 Am. Jur. 830, § 27; 2 Scott on Trusts, 1380, § 238.1.

No prior decision of this court directly in point has been called to our attention, but *Kirwin v. Hall,* 169 Wash. 501, 14 P. (2d) 62, is somewhat analogous. There, a Mr. Hough, the testator, directed in his will that his executors assemble and manage the property of his estate, and pay over the net income therefrom " 'in regular monthly intervals to my beloved wife . . . during the period of her natural life.' " The will further provided that, if the wife survived the

testator, her debts and funeral expenses should be paid from his estate. Upon her death, the residue of his estate was to be devoted to the establishment of an Agricultural High School. With reference to income undistributed upon the wife's death, we said, p. 510:

"Mr. Hough did not bequeath to his wife the net income arising from his estate up to the date of her death, but he directed his executors and trustees to pay over the net income from his estate in regular monthly intervals to Ann Hough during the period of her natural life, and provided that, in case she should survive him, her debts should be paid at her death out of the corpus of his estate. Mr. Hough's will must be construed by its four corners. His intention is manifest. He desired to provide ample care for his wife in case she should survive him. The Agricultural High School was to be the ultimate beneficiary of his bounty. It does not appear that Mr. Hough desired to enrich the estate of his wife at the expense of the high school. He provided for the payment of her debts upon her decease.

"We hold that, under Mr. Hough's will, net income arising from his estate coming into the hands of the trustees after the date of a monthly settlement between them and Mrs. Hough, and before her death, assuming that that event occurred prior to the date for the next monthly payment, would not belong to the estate of Ann Hough, but would remain part of the corpus of the Patrick Hough estate."

In the case at bar, the widow lived until almost the end of the third quarter of the calendar year 1939, and the trial court held that her estate was entitled to apportionment of the payment of eight thousand dollars for that quarter. In so holding the court applied an exception to the general rule that an annuity is not apportionable. This exception, which seems to be supported by the modern trend of judicial opinion, particularly as to an annuity payable from a trust estate as distinguished from one created by contract, obtains

when the annuity has been granted for the support of the annuitant. See Restatement of the Law of Trusts, p. 719, § 238 (2) b; 2 Am. Jur. 831, § 29; 2 Scott on Trusts, 1330, § 238.1.

However, the question whether or not apportionment should have been allowed in the present case is not before us for determination. The only error assigned is the trial court's allowance of only $7,913.04 to appellant instead of the sum of sixteen thousand dollars, as claimed by him. Neither the respondent nor any of the charities named as defendants in the action has cross-appealed from the decree. We are not, therefore, in a position to consider whether there should be a reduction of the amount which the trial court held appellant was entitled to receive from the respondent.

Respondent claims that, on a certain date subsequent to entry of the decree and prior to the giving of notice of appeal, it tendered to appellant the amount then due the latter under the decree; and contends that the running of interest should stop on that date. We shall not pass upon that contention here. It can more properly be determined after the cause has been remanded to the superior court.

The decree is affirmed.

ROBINSON, C. J., MILLARD, and STEINERT, JJ., concur.